

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, ) | |
| ) | 06 C 5812 |
| Plaintiff, ) | |
| ) | |
| v. ) | Honorable Charles R. Norgle |
| ) | |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, and O' M & ASSOCIATES LLC, dba O'MALLEY & ASSOCIATES, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Defendants' Motion to Dismiss Pursuant to the Colorado River Abstention Doctrine. For the following reasons, the court denies Defendants' Motion.

## I. BACKGROUND

### A. Facts

In its Amended Complaint, Plaintiff Metropolitan Life Insurance Company ("MetLife") makes the following allegations. Metlife has operated an insurance sales and financial planning agency in Downers Grove, Illinois for approximately twenty-five years. From 1998 – 2005, this agency was known as "O'Malley & Associates," and Michael O'Malley ("O'Malley") was its Managing Director. MetLife alleges that in April 2005, Defendant The Guardian Life Insurance Company of America ("Guardian") began negotiations with O'Malley regarding the possibility of opening a competing insurance and financial services office in Downers Grove. O'Malley was at

1

that time allegedly subject to the terms of an employment agreement which prohibited him from soliciting MetLife clients or employees on behalf of any other company during his employment with MetLife or for eighteen months afterwards.

O'Malley allegedly agreed to open a competing office for Guardian. This new office was allegedly to be named "O'Malley & Associates," and was to employ many of the same individuals as the original O'Malley & Associates. In order to accomplish this, MetLife alleges, O'Malley, with Guardian's encouragement and as an agent of Guardian, but still employed by MetLife, recruited at least eighteen current MetLife employees to join him at Guardian. MetLife alleges that the majority of these employees were also parties to agreements that prohibited them from soliciting MetLife clients or other employees.

In addition, MetLife alleges that Guardian encouraged and aided the theft of MetLife property. On May 16, 2005 at 10:00 p.m., Guardian's "team," composed of former MetLife employees, accessed the MetLife office using an electronic key card, and allegedly removed a number of MetLife's client files. O'Malley, as an agent of Guardian, then held a meeting at his new O'Malley & Associates office in which he encouraged additional MetLife employees to leave MetLife and join Guardian. During this meeting, O'Malley allegedly directed these MetLife employees to unlawfully remove other MetLife client files. On June 26, 2005, MetLife alleges, a MetLife sales representative's assistant, acting as an agent of Guardian, accessed the MetLife office repeatedly with two unidentified individuals using an electronic key card, and removed several suitcases full of documents. That same night, MetLife alleges, another MetLife sales representative, acting as an agent of Guardian, also used her electronic key card to gain access to the MetLife office and remove several boxes of documents. MetLife has submitted a

CD-ROM containing building surveillance footage which, it asserts, provides substantial evidence in support of these allegations.

On approximately July 5, 2005, Guardian opened its competing office, O'Malley & Associates. MetLife alleges that this office was headed by O'Malley, and employed at least twenty-three former MetLife employees. MetLife further alleges that these former MetLife employees then falsely informed MetLife clients that O'Malley & Associates had merely moved, falsely represented that they could still sell MetLife products and services, and used stolen MetLife client files to solicit MetLife clients to transfer their business to Guardian.

## B. Procedural History

On June 28, 2005, MetLife brought suit against Guardian and former MetLife employees in the Illinois state court system. The state trial court denied MetLife's requests for Temporary Restraining Orders, and dismissed MetLife's claims, holding that the restrictive covenants at issue were unenforceable as a matter of law. The Illinois appellate court, however, determined that MetLife had voluntarily dismissed its claims, and that the trial court therefore had no jurisdiction to rule on the merits of the case. In December 2006, the Illinois Supreme Court denied Guardian's petition for leave to appeal.

At some point in 2005, MetLife also brought a claim in arbitration against Guardian, a Guardian subsidiary, O'Malley, and various former MetLife employees before the National Association of Security Dealers ("NASD"). According to MetLife, the arbitration process continues at present before a panel of NASD arbitrators. Guardian, however, twice moved the arbitration panel to be dismissed from the NASD proceeding, asserting that it had not consented to arbitration. The NASD panel denied Guardian's motions. However, Guardian filed a petition

3

in the Circuit Court of DuPage County, Illinois, asking the court to enjoin NASD from treating Guardian as a party to the arbitration. On October 17, 2006, the Circuit Court complied with Guardian's request. The NASD arbitration therefore proceeds without Guardian, and Guardian is not bound by the result of this arbitration.

In July 2005, MetLife also filed suit in the Northern District of Illinois against Guardian, a Guardian subsidiary, O'Malley, and various former MetLife employees. The Complaint alleged, *inter alia*, a violation of the Lanham Act, breach of contract and fiduciary duty, and conversion. This court determined that O'Malley and the other former MetLife employees had signed employment contracts in which they agreed to arbitrate any claim that arose as a result of their employment with MetLife. The court therefore dismissed the claim for lack of venue pursuant to Federal Rule of Civil Procedure 12(b)(3).

MetLife then, on October 25, 2006 filed a separate suit against Guardian and O'M Associates (doing business as O'Malley and Associates) in the Northern District of Illinois. On February 9, 2007, MetLife filed its Amended Complaint. The Amended Complaint alleges the facts as outlined above, and the following eight Counts: Unfair Competition in Violation of the Lanham Act, Aiding and Abetting a Breach of Fiduciary Duty, Tortious Interference with Contract and Business Relations, Violation of Illinois Trade Secrets Act, Conversion, and Civil Conspiracy. Defendants' Motion to Dismiss or Stay Action Pursuant to the Colorado River Abstention Doctrine is fully briefed. The court notes that, on April 3, 2007, it denied Defendants' Motion to Stay. Defendants' Motion to Dismiss is therefore all that remains before the court.

## II. DISCUSSION

### A. Colorado River Deference

In Colorado River Water Conservation District v. United States, the Supreme Court created an exception to the general rule that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." 424 U.S. 800, 817 (1976). The Colorado River doctrine "allows federal courts to stay or dismiss actions in deference to parallel and ongoing state proceedings in circumstances where abstention doctrines do not apply." Medema v. Medema Builders, Inc., 854 F.2d 210, 212 (7th Cir. 1988). The Colorado River court crafted a two-step procedure lower federal courts could use to determine when it is appropriate to defer to a state court action. Courts must first determine whether the cases are actually "parallel." Cases are parallel if "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1288 (7th Cir. 1988). Courts are then directed to apply a "multi-factor balancing test," Medema, 854 F.2d at 213, which includes inquiries into, *inter alia*, "the inconvenience of the federal forum," "the desirability of avoiding piecemeal litigation," and "the adequacy of the state court action to protect the federal plaintiff's rights." Lumen Constr., Inc. v. Brant Constr. Co., 780 F.2d 691, 694 (7th Cir. 1985).

The court notes that the commonly used phrase "Colorado River abstention," is somewhat of a misnomer. "The parties and the district court in this case committed the common error of referring to 'Colorado River abstention.' While that phrase is often used by lower courts, the Supreme Court distinguishes between Colorado River deference and traditional abstention doctrines." Medema, 854 F.2d at 212 n.1.

5

## B. Defendants' Motion to Dismiss

Regardless of how this doctrine is properly categorized, it is abundantly clear that it does not apply to this case. The parties agree that, in light of the Illinois Supreme Court's denial of Guardian's petition for leave to appeal, the state court case has been concluded, and Colorado River no longer applies. See Ill. Sch. Dist. Agency v. Pac. Ins. Co., 471 F.3d 714, 724 n.4 (7th Cir. 2006) ("[B]ecause a state court action was no longer pending, Colorado River [deference] would have been inappropriate.").

Defendants have not filed a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6). The court notes, however, that it has conducted a preliminary review of the Amended Complaint, and the allegations therein would likely be sufficient to survive such a motion. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . . Rule 12(b)(6) should be employed only when the complaint does not present a legal claim." Smith v. Cash Store Mgmt., Inc., 195 F.3d 325, 327 (7th Cir. 1999); see Leatherman v. Tarrant County, 507 U.S. 163, 168 (1993) (the Federal Rules of Civil Procedure allow for a liberal system of notice pleading); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (a complaint must only include "fair notice of what the plaintiff's claim is and the grounds upon which it rests"); Alliant Energy Corp. v. Bie, 277 F.3d 916, 919 (7th Cir. 2002) ("A complaint need only state the nature of the claim, details can wait for later stages"). When reviewing a motion to dismiss under Rule 12(b)(6), the court therefore merely looks at the sufficiency of the complaint, Swierkiewicz, 534 U.S. at 508; Johnson v. Rivera, 272 F.3d 519, 520-21 (7th Cir. 2001), it does not decide whether the plaintiff has a winning claim. See McCormick v. City of Chicago, 230 F.3d 319, 323-26 (7th Cir. 2000) (analyzing Leatherman, 507 U.S. 163, and reversing the Rule 12(b)(6) dismissal of claims based on §§ 1981 & 1983).

> [P]leadings in federal court need not allege facts corresponding to each element of a statute. It is enough to state a claim for relief - and Fed. R. Civ. P. 8 departs from the old code-pleading practice by enabling plaintiffs to dispense with the need to identify, and plead specifically to, each ingredient of a sound legal theory. . . Plaintiffs need not plead facts; they need not plead law; they plead claims for relief. Usually they need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of.

Doe v. Smith, 429 F.3d 706, 708 (7th Cir. 2005).

Finally, Guardian asks the court to award it attorney's fees and costs pursuant to Federal Rule of Civil Procedure 41(d). The court declines this invitation. The court cannot find, as Guardian requests, that MetLife has filed this action in bad faith, vexatiously, or for oppressive reasons. The reason Guardian finds itself back in the Northern District of Illinois is that it convinced a DuPage County Circuit Court to enjoin NASD from treating Guardian as a party to the underlying arbitration. This left MetLife with no other option but to bring suit against Guardian in the federal court system. The court notes that the record is silent as to whether Guardian had filed a similar motion in state court, and the disposition of any such motion.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Pursuant to the Colorado River Abstention Doctrine is denied. In addition, Defendants' request for attorney's fees and costs is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: April 17, 2007

7