# <u>INDEX OF EXHIBITS</u>

Exhibit 1     Plaintiff's Rule 26 Disclosures (June 21, 2007)

Exhibit 2     MetLife's Responses to Guardian's Second Request for Production of Documents (June 29, 2009)

Exhibit 3     Respondents' First Information Request to Claimant MetLife, pages 1, 6, 14-15 (August 30, 2006)

Exhibit 4     Claimant's Response to Respondents' Fifth Information Request, pages 1, 6-7 (January 27, 2009)

Exhibit 5     Jerald Stiedaman Deposition, pages 1, 6-17, 54-61 (June 4, 2009)

Exhibit 6     Motion of Defendant Laura L. Davis to Require Return of Personal Computers (July 12, 2005)

Exhibit 7     Declaration of Laura Davis in Support of Guardian's Motion to Compel (August 28, 2009)

Exhibit 8     Declaration of Annette Hammortree in Support of Guardian's Motion to Compel (August 28, 2009)

Exhibit 9     MetLife's Memorandum in Support of its Motion for Entry of Protective Order, pages 1, 18-19 (July 20, 2009)

Exhibit 10    Status Hearing Transcript, pages 1-2, 14-15, 24 (July 7, 2009)

Exhibit 11    Order (July 20, 2009)

Exhibit 12    MetLife's Supplemental Responses to Guardian's Second Request for Admissions (August 6, 2009)

Exhibit 13    MetLife's Supplemental Responses to Guardian's Second Request for Production of Documents, pages 1, 3-9 (August 6, 2009)

Exhibit 14    MetLife's Privilege Log

Exhibit 15    Letter from L. Van Auken to M. Sheehan (August 10, 2009)

Exhibit 16    Letter from R. Cowen to L. Van Auken (August 25, 2009)

Exhibit 17    MetLife's Amended Privilege Log (August 25, 2009)

Exhibit 18    *Adkins Energy, LLC v. Farmland Mut. Ins. Co.*, 2009 WL 1259344, at *6 (N.D. Ill. May 6, 2009)

Exhibit 19    *Adams v. Cavanagh Communities Corp.,* 1988 WL 64097, at *2 (N.D. Ill. June 13, 1988)

Exhibit 20    *Danis v. USN Communications, Inc.*, 2000 WL 1694325, at *13-14, *39-40 (N.D. Ill. Oct. 23, 2000)

Exhibit 21    *Keir v. Unumprovident Corp.*, 2003 WL 21997747, at *6 (S.D.N.Y. Aug. 22, 2003)

Exhibit 22    Guardian's Second Request for Production of Documents (May 31, 2009)

Exhibit 23    *Abbott Labs. v. Alpha Therapeutic Corp.*, 2000 U.S. Dist. LEXIS 20835, at *12, *14 (N.D. Ill. Dec. 14, 2000)

Exhibit 24    Declaration of Jerald Stiedaman (May 11, 2009)

Exhibit 25    NASD Dispute Resolution Transcript, pages 93, 96, 102-105 (July 25, 2007), pages 851, 1064-71 (February 5, 2009), pages 420, 441, 463-64 (May 28, 2009)

Exhibit 26    FINRA BrokerCheck Report for MetLife Securities Inc., CRD# 14521 (June 7, 2009)

Exhibit 27    NASD Dispute Resolution Transcript, pages 1055, 1080-83 (November 27, 2007)

Exhibit 28    Guardian's Second Request for Admissions (May 31, 2009),

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 06 C 5812 |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, O'M & ASSOCIATES LLC, DBA O'MALLEY & ASSOCIATES | ) ) ) ) ) | Judge Charles R. Norgle Magistrate Judge Martin C. Ashman |
| Defendants. | ) | |

## Plaintiff's Rule 26 Disclosures

Pursuant to Fed. R. Civ. P. 26(a)(1)(A), Plaintiff Metropolitan Life Insurance Company

submits the following as its initial disclosures:

### I.   Individuals Likely to Have Discoverable Information

1.  Debbie Covay          Agency Sales Director, MetLife Downers Grove. Has knowledge of removal of client files from office; investigation of missing client files; searches of email systems conducted following departure of agents.

2.  Dean Gregory          Managing Director, MetLife Downers Grove. Has knowledge of MetLife policies and procedures; business operations of MetLife's Downers Grove Office.

3.  Michael Garzanelli    Has knowledge of financial matters

4.  Paula Fitzgibbon      Has knowledge of financial matters

5.  Mike Vietri           Executive Vice-president, MetLife's Agency Distribution Group. Has knowledge of personnel and operations of MetLife Downers Grove.

6.  Pat McNally           Expert witness on damages.

II.    **Categories/Descriptions of Documents and Tangible Things MetLife May Use to Support its Position**

    1.  Documents previously produced in companion case <u>Metropolitan Life Insurance Company v. Park Avenue Securities, *et al*</u>., NASD No. 05-03694, which the parties have agreed may be used in this matter.

    2.  Documents identified by any other party in its Rule 26 Disclosures.

III.   **Computation of Damages**

    1.  Documents previously produced in companion case <u>Metropolitan Life Insurance Company v. Park Avenue Securities, *et al*</u>., NASD No. 05-03694, which the parties have agreed may be used in this matter.

IV.    **Insurance Agreements**

    Plaintiffs are not aware of any relevant insurance policies.


MetLife reserves the right to supplement these initial disclosures pursuant to the Federal Rules of Civil Procedure.


Dated:  June 21, 2007

                           Respectfully Submitted by:

                           *Rachel Cowen*

                           Michael J. Sheehan
                           Rachel B. Cowen
                           Esther H. Vreeman-Moll
                           Connelly Sheehan Harris
                           150 South Wacker Drive, Suite 1600
                           Chicago, Illinois 60606
                           Telephone:  (312) 372-1969

                           COUNSEL FOR PLAINTIFF

## Certificate of Service

I certify that on this 21st day of June, 2007 I caused the foregoing Plaintiff's Rule 26(a)(1) Disclosures to be served via first class mail, postage pre-paid, upon:

Steven T. Whitmer
Terrence P. Canade
Lord Bissell & Brook
111 S. Wacker Drive
Chicago, IL 60606-4410

*Rachel Cowen*

**EXHIBIT 2**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| METROPOLITAN LIFE<br>INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE GUARDIAN LIFE INSURANCE<br>COMPANY OF AMERICA,<br>O'M & ASSOCIATES LLC, DBA<br>O'MALLEY & ASSOCIATES<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 06 C 5812<br><br>Judge Charles R. Norgle<br>Magistrate Judge<br>Martin C. Ashman |

## MetLife's Responses to Guardian's
## Second Request For Production of Documents

Plaintiff Metropolitan Life Insurance Company ("MetLife") responds to Defendant The

Guardian Life Insurance Company of America's ("Guardian") Second Request For Production of

Documents as follows:

### GENERAL OBJECTIONS

MetLife objects to Guardian's Instructions and Definitions to the extent they impose

burdens and requirements that are different from, or broader than those imposed by the Federal

Rules of Civil Procedure.

### RESPONSES

1.     All documents referring or relating to MetLife's review, examination,
consideration and/or analysis of the productivity or production targets set for each of the
following individuals during the period Octriber 2004 through and including October 2005: (a)
Jeffrey Adler; (b) Ann Beck; (c) Jeff Bishop; (d) Bruce Bitter; (e) Ann Brennan; (f) Laura Davis;
(g) John DeSimone; (h) Mary Patricia Ernst; (i) Annette Hammortree; (j) Richard Henson; (k)
James Hoeflinger; (1) Rhonda Jecman; (m) Justin LaMonica; (n) Tricia Overton; (o) Rathika

Pathy; (p) Vinay Phommachanh; (q) Donald Sackow; (r) Kurt Tuzinkewich; (s) James Wilbert; (t) Greg Zastrow; and (u) Leo Zimmerman.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request

within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely,

MetLife does not here assert any other basis for objection and reserves the right to assert all other

objections.

  2. All documents which form the factual basis for Plaintiff's allegation that "Guardian knew O'Malley was subject to the 16449 agreement" as alleged in paragraph 21 of the Amended Complaint.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request

within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely,

MetLife does not here assert any other basis for objection and reserves the right to assert all other

objections.

  3. All documents which form the factual basis for Plaintiff's allegation that "Guardian encourage[d]" "O'Malley [to] recruit[] a team of his employees to" "join Guardian's competing office" as alleged in paragraph 22 of the Amended Complaint.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request

within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely,

MetLife does not here assert any other basis for objection and reserves the right to assert all other

objections.

  4. All documents which form the factual basis for Plaintiff's allegation that "Guardian encourage[d]" "O'Malley [to] recruit[] a team of his employees to steal MetLife's client files" as alleged in paragraph 22 of the Amended Complaint.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request

within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely,

MetLife does not here assert any other basis for objection and reserves the right to assert all other objections.

     5.    All documents which form the factual basis for Plaintiff's allegation that "Guardian encourage[d]" "O'Malley [to] recruit[] a team of his employees to" use "stolen client files to solicit MetLife customers" as alleged in paragraph 22 of the Amended Complaint.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely, MetLife does not here assert any other basis for objection and reserves the right to assert all other objections.

     6.    All documents which form the factual basis for Plaintiff's allegation that Guardian "knew that most of the MetLife employees" "solicited were parties to 16449 agreements which prohibited them from soliciting MetLife clients or employees for 18 months" as alleged in paragraph 22 of the Amended Complaint.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely, MetLife does not here assert any other basis for objection and reserves the right to assert all other objections.

     7.    All documents which support Plaintiff's allegation that John DeSimone, Laura Davis and/or Mary Patricia Ernst were agents of Guardian at any time prior to July 1, 2005.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely, MetLife does not here assert any other basis for objection and reserves the right to assert all other objections.

8.    All documents reflecting any list, index and/or inventory of the hard copy client files maintained at the MetLife Downers Grove agency at any time during the period January 1, 2005 through and including October 1, 2005.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request

within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely,

MetLife does not here assert any other basis for objection and reserves the right to assert all other

objections.

9.    All documents referring or relating to the examination of files undertaken by MetLife representatives during July 2005 at the offices of Piccone, Keeley & Associates, including but not limited to any handwritten or electronic notes taken during the review and any and all drafts of the document entitled "File Inventory."

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request

within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely,

MetLife does not here assert any other basis for objection and reserves the right to assert all other

objections.

10.    All documents reflecting Guardian's knowledge that client files were being removed from the Downers Grove agency by or on behalf of (a) John DeSimone; (b) Laura Davis; (c) Mary Patricia Ernst; and/or (d) Annette Hanunortree, at any time during the period May 1, 2005 through and including July 1, 2005.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request

within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely,

MetLife does not here assert any other basis for objection and reserves the right to assert all other

objections.

11.    All documents which support Plaintiff's allegation that it was "harmed by the loss of [ ] client files" as alleged in paragraph 57 of the Amended Complaint.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request

within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely,

MetLife does not here assert any other basis for objection and reserves the right to assert all other objections.

12.     All documents which support Plaintiff's allegation that Guardian has been "unjustly enriched" by the acts alleged in the Amended Complaint.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely, MetLife does not here assert any other basis for objection and reserves the right to assert all other objections.

13.     All documents which support the allegations set forth in paragraph 44 of the Amended Complaint that Guardian knowingly aided and abetted Michael O'Malley in soliciting MetLife employees or customers.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely, MetLife does not here assert any other basis for objection and reserves the right to assert all other objections.

14.     All documents which support Plaintiff's allegation that Guardian induced "former MetLife employees to repudiate the non-compete and non-solicitation provisions of their 16449 agreements" as alleged in paragraph 63 of the Amended Complaint.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely, MetLife does not here assert any other basis for objection and reserves the right to assert all other objections.

15.     All documents reflecting or referring to MetLife's repeated demands that Guardian return any client files as alleged in paragraph 79 of the Amended Complaint.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely, MetLife does not here assert any other basis for objection and reserves the right to assert all other objections.

16.     All documents which support Plaintiff's allegation that Guardian is liable for the conduct alleged in Count VII of the Amended Complaint under a theory of respondeat superior.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely, MetLife does not here assert any other basis for objection and reserves the right to assert all other objections.

17.     All documents reflecting the steps taken by MetLife to notify customers of the loss of their personal information due to the breach of MetLife's security alleged in paragraph 69 of the Amended Complaint.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely, MetLife does not here assert any other basis for objection and reserves the right to assert all other objections.

18.     All documents reflecting the steps which MetLife has taken to mitigate the damages alleged in the Amended Complaint with respect to each cause of action.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely, MetLife does not here assert any other basis for objection and reserves the right to assert all other objections.

19.    All documents relating or referring to the security measures in place at the MetLife Downers Grove agency during the period January 1, 2005 through and including October 1, 2005, to maintain the security of the following: (a) customer names, addresses and phone numbers; (b) customer financial information; (c) customer insurance policy numbers; and (d) customer insurance policy documentation and investment portfolio information.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request

within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely,

MetLife does not here assert any other basis for objection and reserves the right to assert all other

objections.


20.    All documents reflecting, relating or referring to any steps taken by MetLife to preserve the information maintained on the hard drives of all of the desktop and laptop computers supplied by MetLife to each of the following individuals for use in connection with their employment by MetLife: (a) Jeffrey Adler; (b) Ann Beck; (c) Jeff Bishop; (d) Bruce Bitter; (e) Ann Brennan; (f) Laura Davis; (g) John DeSimone; (h) Mary Patricia Ernst; (i) Annette Hammortree; (j) Richard Henson; (k) James Hoeflinger; (l) Rhonda Jecman; (m) Justin LaMonica; (n) Michael O'Malley; (o) Tricia Overton; (p) Rathika Pathy; (q) Vinay Phonunachanh; (r) Donald Sackow; (s) Kurt Tuzinkewich; (t) James Wilbert; (u) Greg Zastrow; and (v) Leo Zimmerman.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request

within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely,

MetLife does not here assert any other basis for objection and reserves the right to assert all other

objections.


21.    All documents regarding any forensic analysis of computers and servers located at MetLife's Downers Grove Agency undertaken by or on behalf of MetLife during July 2005, to determine which, if any, of the individuals listed in paragraph 31 of MetLife's Amended Complaint accessed the MetDirect database in May and June 2005 and downloaded and/or copied MetDirect reports from that database.

**RESPONSE:** MetLife objects to this request as untimely. Guardian failed to serve this request

within 30 days of the June 1, 2009 discovery cutoff date. Because this request is untimely,

MetLife does not here assert any other basis for objection and reserves the right to assert all other

objections.

22.     Any and all litigation holds, document preservation notices and/or other communication(s) provided by MetLife to its personnel in connection with the claims asserted in this litigation from January 1, 2005, through the present.

**RESPONSE:** MetLife objects to this request as untimely.  Guardian failed to serve this request

within 30 days of the June 1, 2009 discovery cutoff date.  Because this request is untimely,

MetLife does not here assert any other basis for objection and reserves the right to assert all other

objections.

Respectfully submitted,

Michael J. Sheehan
Rachel B. Cowen
Richard S. Cozza
Drinker Biddle & Reath LLP
191 N. Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone: 312.569.1000

Dated:  June 29, 2009                    COUNSEL FOR PLAINTIFF

-8-

## CERTIFICATE OF SERVICE

I certify that on this 29th day of June, 2009 I served via overnight and electronic mail the

foregoing **MetLife's Responses to Guardian's Second Request for Production of Documents**

upon the following:

Terrence P. Canade
Steven T. Whitmer
Bryan Deaton
Locke, Lord, Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606-4410
(312) 443-0336 Fax
swhitmer@lockelord.com
tcanade@lockelord.com

Kimball Anderson
Marlon Emile Lutfiyya
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5858
kanderson@winston.com
mlutfiyya@winston.com

Virginia Richard
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
(212) 294-4639
vrichard@winston.com

Richard S. Cozza

# EXHIBIT 3

**NASD DISPUTE RESOLUTION**

---

METROPOLITAN LIFE INSURANCE
COMPANY,

        Claimant,

    v.

THE GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA, PARK AVENUE
SECURITIES LLC, a wholly owned subsidiary of
the Guardian Life Insurance Company of America,
MICHAEL K. O'MALLEY, LAURA L. DAVIS,
ANNETTE HAMMORTREE, and MARY
PATRICIA ERNST,

        Respondents.

---

NASD-DR No. 05-03694

## RESPONDENTS' FIRST INFORMATION REQUEST TO CLAIMANT METLIFE

      Respondents Park Avenue Securities LLC ("PAS"), Michael K. O'Malley, Laura L.

Davis, Annette Hammortree, and Mary Patricia Ernst serve this First Information Request which

claimant Metropolitan Life Insurance Company ("MetLife") shall satisfy pursuant to NASD

Rule 10321.

### Definitions

      1.     "MetLife's Downers Grove Office" means the MetLife office at Downers Grove,

Illinois (together with any remote or satellite offices, including Crystal Lake, which reported to

the Downers Grove office) that MetLife has placed at issue in this arbitration.

      2.     "Registered Representative" means a person engaged in sales of securities

products and registered with the NASD, including the individual Respondents to this arbitration.

**Documents Requested**

General Issues

17.     Documents upon which MetLife will rely to support its claim for damages at hearing.

18.     Complete MetLife personnel files for each individual Respondent.

19.     Competition files and similar documents which reflect MetLife efforts to monitor and/or to compete with PAS.

20.     All email, notes, memoranda, and other documents which reflect communication among personnel at MetLife's Downers Grove Office concerning any of the arbitration and litigation actions between MetLife and Respondents.

21.     All email, notes, memoranda, and other documents which reflect communication between anyone in MetLife's Downers Grove Office, on one hand, and anyone (other than MetLife counsel) outside of MetLife's Downers Grove Office, on the other hand, concerning any of the arbitration and litigation actions between MetLife and Respondents.

22.     Reports, tables, search results, memoranda, notes, and other documents which reflect efforts of MetLife – from January, 2005 to the present – to investigate, to search, or otherwise to analyze computer records, computer equipment, electronic data, data storage equipment, email, and/or network activity regarding any Respondent.

23.     Documents sufficient to establish the nature, amounts, and dates of the "considerable resources" that MetLife allegedly expended in marketing MetLife's Downers Grove Office, as alleged in MetLife's Statement of Claim (at 2).

6

67.     All email, correspondence, memoranda, notes, and other documents which relate to or otherwise reflect MetLife's decision and/or efforts to file a U-5 statement which reflects that MetLife terminated Ms. Ernst.

68.     All company policies, personnel manual sections, memoranda, notices, and other documents which establish MetLife procedures for completion of U-5 statements for former employees of MetLife.

MetLife Material Issues

69.     Specimens of each document wherein MetLife defines what constitutes confidential or proprietary Client information.

70.     All email, reports, analyses, and other documents which reflect efforts to analyze files, hard drives, data storage, and/or network activity to determine whether any Respondent misappropriated any MetLife material.

71.     Reports, memoranda, notes, and other documents which reflect any MetLife effort, from January, 2005 to the present, to compile lists of missing Client files.

72.     All email, memoranda, notes, correspondence, contracts, and other documents which pertain to MetLife's efforts to maintain or to discontinue use of any telephone number in connection with MetLife's Downers Grove Office since January 1, 2004.

73.     Documents which reflect any effort of MetLife formally to register the name or logo of "O'Malley & Associates" with any federal, state or local agencies, including the NASD.

14

74.     Specimen marketing materials (including television, print and internet advertisements; print brochures; and form letters to Clients or potential Clients) for MetLife's Downers Grove Office since January 1, 2004.

Dated: August 30, 2006

                        PARK AVENUE SECURITIES LLC,
                        MICHAEL K. O'MALLEY, LAURA L. DAVIS,
                        ANNETTE HAMMORTREE, and
                        MARY PATRICIA ERNST

                    By: _____
                        One of Their Attorneys

Terrence P. Canade
Steven T. Whitmer
LORD, BISSELL & BROOK LLP
111 South Wacker Drive
Chicago, Illinois 60606-4410
(312) 443-1862 (T.P. Canade)
(312) 443-1869 (S.T. Whitmer)

COUNSEL FOR RESPONDENTS

15

**NASD DISPUTE RESOLUTION**

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Claimant,<br><br>v.<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, PARK AVENUE SECURITIES LLC, a wholly owned subsidiary of the Guardian Life Insurance Company of America, MICHAEL K. O'MALLEY, LAURA L. DAVIS, ANNETTE HAMMORTREE, and MARY PATRICIA ERNST,<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)  NASD-DR No. 05-03694<br>)<br>)  **CERTIFICATE OF SERVICE**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

The undersigned attorney, Steven T. Whitmer, certifies that on this 30th day of August, 2006, he caused a true and correct copy of the foregoing **RESPONDENTS' FIRST INFORMATION REQUEST TO CLAIMANT METLIFE** in the captioned matter to be served by messenger upon the following:

> Michael J. Sheehan
> Connelly Sheehan Harris LLP
> 150 South Wacker Drive, Suite 1600
> Chicago, Illinois 60606
>
> NASD Dispute Resolution
> c/o Edward T. Anderson, Senior Attorney
> Midwest Region
> 55 West Monroe Street, Suite 2600
> Chicago, Illinois 60603

Terrence P. Canade
Steven T. Whitmer
LORD, BISSELL & BROOK LLP
111 South Wacker Drive
Chicago, Illinois 60606
(312) 443-1862 (T.P. Canade)
(312) 443-1869 (S.T. Whitmer)

COUNSEL FOR RESPONDENTS

**EXHIBIT 4**

Before the Financial Industry Regulatory Authority
FINRA Arbitration

METROPOLITAN LIFE INSURANCE          )
COMPANY,                             )
                                     )
            Claimant,                )
                                     )
      v.                             )
                                     )  FINRA Dispute Resolution
                                     )  No. 05-3694
PARK AVENUE SECURITIES, LLC,         )
a wholly owned subsidiary of         )
The Guardian Life Insurance          )
Company of America, MICHAEL K.       )
O'MALLEY, LAURA L. DAVIS,            )
ANNETTE HAMMORTREE, JOHN             )
DESIMONE, and MARY PATRICIA          )
ERNST,                               )
                                     )
                                     )
            Respondents.             )
_____

## Claimant's Response to Respondents' Fifth Information Request

MetLife hereby responds to Respondents' information request as follows:

### Documents Requested

1.      All emails, communications, files, correspondence, documents, notes, and records of discussions relating to MetLife's recruitment and hiring of representatives from PAS/Guardian ("PAS Representatives") from January 1, 1999 to the present, including but not limited to Richard Siskey, George Avant, Jr., and /or Paul Candella.

**Response:**      This request is unduly burdensome and irrelevant. First, MetLife does not

maintain records easily identifying its representatives' prior employers. Rather, MetLife would

either have to manually search the personnel records of every agent who has worked for MetLife

in the last 10 years (20,589 reps hired in that timeframe). Alternatively, MetLife would have to

**Response:**    Sabrina Cunningham first became a client through her employer's (Saint
Anthony's Health Center) 403b plan, which was previously opened through Citistreet, when
MetLife acquired Travelers in 2003. MetLife only provided services to Ms. Cunningham
through her 403b product. The MetLife agency that had responsibility for providing services to
Ms. Cunningham was MLR Office 27Q out of Carlinville IL. MetLife representative Steven
Griffin had and continues to have responsibility for providing such services to Ms. Cunningham.

3.    State whether Sabrina Cunningham was at any time a client of Preferred Planning Group
or any representative affiliated at any time with Preferred Planning Group.

**Response:**    Sabrina Cunningham was and continues to be a client of MetLife as described in
Response #2 above. Ms. Cunningham has never been a client of the Preferred Planning Group
based in the Greater Chicago area.

4.    Identify with specificity any and all efforts taken by MetLife to preserve electronic data,
including email, related to this case.

**Response:**

Absent any suggestion that MetLife has failed to preserve evidence, this request is
irrelevant. Over objection, MetLife suspends automatic mailbox deletions relevant to a
particular pending, threatened or likely lawsuit or government investigation, and MetLife
complies with SEC record-keeping requirements when deciding whether to retain or delete e-
mails and other records. Without a more detailed explanation of the category of information
Respondent alleges that MetLife failed to preserve, MetLife cannot provide more information.

- 6 -

Respectfully submitted,

Michael J. Sheehan
Rachel B. Cowen
Michael S. Booher
Drinker Biddle & Reath LLP
191 N. Wacker Drive, Suite 3700
Chicago, IL 60606
(312) 569-1000

January 27, 2009

- 7 -

## Certificate of Service

I certify that on this 27th day of January, 2009, I caused the foregoing **Claimant's Response to Respondents' Fifth Information Request** to be served via e-mail upon:

Terrence P. Canade
Steven T. Whitmer
Bryan Deaton
Locke, Lord, Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606-4410
swhitmer@lockelord.com
tcanade@lockelord.com
bdeaton@lockelord.com

s/ Michael Booher

- 8 -

# EXHIBIT 5

          IN THE UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF ILLINOIS

                 EASTERN DIVISION

METROPOLITAN LIFE          )

INSURANCE COMPANY,         )

          Plaintiff,       )  No. 06 C 5812

   vs.                     )

THE GUARDIAN LIFE          )

INSURANCE COMPANY OF

AMERICA, O'M &

ASSOCIATES LLC, DBA

O'MALLEY & ASSOCIATES,

          Defendants.

      The deposition of JERALD STIEDAMAN,

called for examination pursuant to the Rules of

Civil Procedure for the United States District

Courts pertaining to the taking of depositions,

taken before Mary Ellyn Andriopoulos-D'Andrea, a

notary public within and for the County of Cook

and State of Illinois, at 35 West Wacker,

Chicago, Illinois, Illinois, on June 4, 2009, at

the hour of 11:00 o'clock a.m.

DEPOSITION OF JERALD STIEDAMAN - June 4, 2009

Page 6

1  of documents dated May 29, 2009.
2      (Whereupon, STIEDAMAN Deposition
3      Exhibit No. 2 was marked for
4      identification.)
5  BY MS. RICHARD:
6      Q.  Take a look at Exhibit 2, sir, and tell
7  us if you have seen that document before?
8      A.  I have seen portions, yes.
9      Q.  And what portions have you seen, sir?
10     A.  I believe it was Page 4.
11     Q.  So, you reviewed Page 4, is that
12  correct?
13     A.  I looked --I did look at this, yes.
14     Q.  And when was that, sir?
15     A.  That was this morning.
16     Q.  With respect to Item 1 on Page 4 all
17  documents relating to the review of files
18  undertaken during July 2005 at the offices of
19  Piccone, Keeley & Associates, Ltd., in
20  connection with the action entitled Metropolitan
21  Life Insurance Company versus DeSimone et.al.
22  Is the case title -- what documents, if any, did
23  you review in connection with that item?
24     A.  We reviewed some of the -- or the

Page 7

1  documents of review that was produced in July
2  of 2005.
3      Q.  What were those documents, sir?
4      A.  It was a listing of all returned files
5  to -- I forgot the name of the law office in
6  2005.
7      Q.  And, to the best of your knowledge, is
8  that the only document which exists with respect
9  to the investigation which you undertook of
10  files at the offices of Piccone Keeley and
11  Associates in July of 2005?
12     A.  To my understanding, yes, that is
13  correct.
14     Q.  And when was the last time you saw that
15  particular document?
16     A.  This morning.
17     Q.  And was it on its own without any other
18  documents?
19     A.  It was a printed out on its own, yes.
20     Q.  Okay.  And Paragraph 2, all documents
21  relied upon, reviewed, or considered in
22  connection with the preparation of Claimant's
23  Exhibit 32 entitled "file inventory", which was
24  submitted in the matter Metropolitan Life

Page 8

1  Insurance Company versus Park Avenue Securities
2  et.al, FINRA case number 05-3694 including but
3  not limited to all handwritten notes, electronic
4  notes, and other materials upon which the
5  information contained in the file inventory is
6  based and any and all drafts or other versions
7  of Claimant's Exhibit 32.
8          What documents, if any, did you review
9  with respect to that request?
10     A.  It was the Exhibit 32.
11     Q.  Exhibit 32?
12     A.  Yes.
13     Q.  Yes.
14          And what documents did you rely on to
15  prepare Exhibit 32?
16     A.  Exhibit 32 was created based upon the
17  notes taken at the law office -- I am sorry, I
18  forgot the name of the law office -- in July
19  of 2005 of the personal inventorty.
20     Q.  And when you say notes taken, how were
21  those notes taken?
22     A.  There were two of us present at that
23  time.  One was going through each of the return
24  files and dictating to the other what was in

Page 9

1  possession.
2      Q.  Now, who was going through the files,
3  and who was taking the notes?
4      A.  I was going through the files, and last
5  name Dunfey was the one who was taking the notes
6      Q.  Now, is Dunfey a male or female?
7      A.  I am sorry he is male.  I forget his
8  first name.
9      Q.  And when did this investigation of the
10  files commence?
11     A.  It was around July 7 or 8 of 2005, I
12  believe.
13     Q.  And when you say one was dictating what
14  was in the files, and the other was taking
15  notes, how were those notes being taken?
16     A.  A lot of the files were returned in
17  banker's boxes.  Take out a file from that
18  banker's box and say -- this says Joe Smith DI,
19  so a note would be taken:  This box file one is
20  Joe Smith DI.
21     Q.  And how were the notes taken, sir?
22     A.  By hand.
23     Q.  So, Mr. Dunfey, was sitting -- was he
24  sitting next to you, was he sitting across from

DEPOSITION OF JERALD STIEDAMAN - June 4, 2009

Page 10

1    you; where was he in relation to you when he was
2    taking these handwritten notes?
3        A.   Close proximity. I mean he wasn't
4    standing right over my shoulder, but he was from
5    here to there apart.
6        Q.   So, he wouldn't naturally see the name
7    on the file or the contents on the file when you
8    were taking the notes?
9        A.   No, he did not.
10       Q.   And did there come a time during this
11   investigation when you and Mr. Dunfey switched
12   roles, or did you remain in your role of
13   identifying the files throughout?
14       A.   I was in the role of identifying the
15   files throughout.
16       Q.   And how long did this process go on?
17       A.   We were there all day. I would have to
18   say six to eight hours perhaps.
19       Q.   And during this entire time was this
20   continuous?
21       A.   It was continuous. There was no break,
22   correct.
23       Q.   And during this entire time Mr. Dunfey
24   was taking handwritten notes?

Page 11

1        A.   That is correct.
2        Q.   And what was the volume of the
3    handwritten notes that Mr. Dunfey created?
4        A.   I would have to say he had a flip pad
5    eight to twelve pages perhaps.
6        Q.   And at the end of the day did you go
7    through Mr. Dunfey's notes to see if he
8    accurately recorded your dictation?
9        A.   At the end of the day there was no
10   review, but I would check, and he would always
11   ask for is this correct to make sure that there
12   was clarification when necessary.
13       Q.   Okay. But at the end of the day you
14   did not go through Mr. Dunfey's handwritten
15   notes to make sure that he had accurately
16   recorded your dictation?
17       A.   No, I did not do a comprehensive
18   review.
19       Q.   Did you do any review?
20       A.   No.
21       Q.   Okay. Now, after you completed the
22   review and Mr. Dunfey had this volume of eight
23   to twelve pages of handwritten notes, what
24   happened next with respect to this inventory

Page 12

1    project?
2        A.   Mr. Dunfey then typed up the notes in
3    word format, and that was sent on to me, and
4    also shared with --
5        Q.   Were you there when Mr. Dunfey typed up
6    the notes?
7        A.   I was not there when he typed up the
8    notes.
9        Q.   How do you know he typed up the notes?
10       A.   They were labeled the same way we were
11   labeling in the office. It was a direct listing
12   of okay, this is Box 1, Box 2.
13       Q.   But you don't know of your own personal
14   knowledge that Mr. Dunfey actually did the
15   typing?
16       A.   No -- did I physically watch him type
17   the notes, no, I did not.
18       Q.   Okay. So, at some point in time you
19   received a typewritten list of this inventory,
20   is that correct?
21       A.   That is correct.
22       Q.   And approximately how much time elapsed
23   between the time you dictated the information
24   concerning the files to Mr. Dunfey and you

Page 13

1    received the typewritten list?
2        A.   I would have to say that would be a
3    week or less. I don't recall the exact window
4    of time.
5        Q.   And where were you when you received
6    the list?
7        A.   At the office of MetLife and Preferred
8    Planning Group.
9        Q.   And did the list come in by mail or how
10   did it come?
11       A.   E-mail format.
12       Q.   And it came to your attention?
13       A.   Yes.
14       Q.   By e-mail.
15           And who did it come from?
16       A.   Again I would believe Kevin Dunfey or
17   perhaps another member of counsel.
18       Q.   And did it come in your MetLife
19   computer?
20       A.   Yes.
21       Q.   You still have that computer?
22       A.   I still have my Lotus notes, yes. I do
23   not have that computer anymore though, no. I
24   have switched roles in the company.

DEPOSITION OF JERALD STIEDAMAN - June 4, 2009

Page 14

1    Q. What do you mean you still have your
2  Lotus notes?
3    A. I still have my e-mail account with
4  MetLife. Do I still have the computer I
5  received that file on? No, I do not.
6    Q. Do you still have e-mail that you
7  received.
8    A. No, I do not.
9    Q. What happened to it?
10   A. E-mails are automatically deleted after
11 a certain amount of time.
12   Q. And you weren't told to retain any
13 e-mails relating to your investigation in this
14 matter, ongoing court proceeding?
15   A. I was not.
16   Q. And were you told to retain any e-mails
17 at all with respect to this court proceeding?
18   A. No.
19   Q. And did you receive a litigation hold
20 from Drinker Biddle or any other counsel,
21 in-house counsel for MetLife with respect to any
22 correspondence electronic or hard copy with
23 respect to the ongoing court proceedings
24 involving MetLife and Park Avenue Securities and

Page 15

1  MetLife and Guardian Life?
2    A. I do not recall receiving that.
3    Q. Okay. So, is it fair to say that any
4  e-mails that you may have received with respect
5  to either of those proceedings have been deleted
6  from your e-mail account?
7    A. Automatic deletion, it could have
8  happened, yes.
9    Q. Well, did it?
10   A. I don't know, perhaps.
11   Q. In that 30-day window that you have for
12 deletions?
13   A. Has any deletions happened recently,
14 no, but -- could you rephrase? I am sorry about
15 that.
16   Q. Well, you said there was a 30-day
17 period for deletion, automatic deletions,
18 correct, on your e-mail account?
19   A. No, no, no. I am sorry, it's about
20 18 months.
21   Q. 18 months?
22   A. 18 months is how long e-mails will stay
23 in Lotus notes, and then for size reasons
24 because they don't want e-mail accounts to have

Page 16

1  too much data. IT will automatically go in and
2  delete e-mails?
3    Q. So it's fair to say that certainly any
4  e-mails relating to either one of these
5  proceedings that you may have received in 2005
6  have been deleted?
7    A. Yes, that would be fair to say.
8    Q. And it's also fair to say any e-mails
9  you may have received with respect to any of
10 those proceedings in 2006 are deleted?
11   A. Correct.
12   Q. And the same is true for 2007?
13   A. Yes -- yes.
14   Q. And the same is true for 2008?
15   A. No.
16   Q. There would be e-mails relating to
17 either of those proceedings from 2008?
18   A. I can't say for certain, but they would
19 have not automatically been deleted.
20   MR. SHEEHAN: Excuse me, Virginia, when you
21 get to a point, I need to take a break for a
22 second.
23   MS. RICHARD: Fine.
24   MR. SHEEHAN: Is right now okay?

Page 17

1    MS. RICHARD: Yes.
2    MR. SHEEHAN: What I would like to do --
3    THE VIDEOGRAPHER: The time is 11:30, and we
4  are off the record.
5        (Whereupon, a discussion was had
6        off the record.)
7    THE VIDEOGRAPHER: Back on had record. The
8  time is 11:32.
9  BY MS. RICHARD:
10   Q. Okay.
11       Now, when you received the typewritten
12 list from someone unknown at Drinker Biddle, as
13 it was, I guess, then Connelly Sheehan,
14 correct --
15   A. Correct.
16   Q. -- did you ask to see the handwritten
17 notes to compare the written notes with the
18 handwritten notes?
19   A. I did not.
20   Q. And since that day in mid July of 2005
21 have you ever seen the handwritten notes
22 regarding your investigation?
23   A. No.
24   Q. So, you received the typewritten list,

DEPOSITION OF JERALD STIEDAMAN - June 4, 2009

Page 54

1   Davis' missing files on or about June 29, 2005?
2      A.  Yes, from what I was told of the coming
3   in over the weekend and removing client files,
4   and there was a subsequent conversation between
5   Laura Davis and Dean Gregory that was party to?
6      Q.  So, who told you that Laura Davis came
7   in over the weekend and removed files?
8      A.  Either Dean or Debbie, I am not sure
9   who.
10     Q.  And do you have any recollection of
11  what in sum and substance they told you about
12  that circumstance?
13     A.  Nothing too detailed, because at that
14  time it didn't really -- it didn't really impact
15  me at that point.  That was a compliance and a
16  managing director issue.
17     Q.  Compliance in what respect, sir?
18     A.  Client files are a required compliance
19  that you maintain them, so at that time it was
20  an issue between the operation slash compliance
21  at MetLife Downers Grove and the manager
22  director, not with the training director.
23     Q.  And who was in operations compliance at
24  that time at Downers Grove?

Page 55

1      A.  Name is now Debbie Forsythe, but at the
2   time it was Debbie Covay--
3      Q.  Debbie?
4      A.  Covay, C-o-v-a-r.
5      Q.  I ask Miss Reporter to mark as
6   Exhibit 4 document which bears production D35
7   dated June 29, 2005; missing clients file.
8          (Whereupon, STIEDAMAN Deposition
9           Exhibit No. 4 was marked for
10          identification.)
11  BY MS. RICHARD:
12     Q.  Take a look at Exhibit 4, sir, and tell
13  us if you have seen that before?
14     A.  I have not.
15     Q.  So this is not a document which you
16  typed up?
17     A.  It is not.
18     Q.  I ask Miss Reporter to mark Exhibit 5 a
19  document entitled summary of conversation
20  between Dean Gregory and Laura Davis, Wednesday
21  June 29, 2005, which bears production number
22  D354 through D356.
23
24

Page 56

1          (Whereupon, STIEDAMAN Deposition
2           Exhibit No. 5 was marked for
3           identification.)
4   BY MS. RICHARD:
5      Q.  Take a look at Exhibit 5, sir, and tell
6   us if you have seen that?
7      A.  I have.
8      Q.  And is that a document which you typed?
9      A.  It is.
10     Q.  And did you type that from the
11  handwritten notes?
12     A.  Yes.
13     Q.  And where are those handwritten notes,
14  sir?
15     A.  I have no idea at this point.
16     Q.  You weren't asked to retain them by
17  counsel?
18     A.  No, I was not.
19     Q.  And this document was typed up on your
20  MetLife computer, is that correct?
21     A.  That is correct.
22     Q.  And would this document reside on your
23  hard drive?
24     A.  No.  I have a new computer since then.

Page 57

1      Q.  When did you get your new computer?
2      A.  My computer crashed on about two years
3   ago.  So, June of '05, June, July, somewhere in
4   there.
5      Q.  Your computer crashed June or July
6   of 2000?
7      A.  2005, yes.  I was on the road for my
8   job.
9      Q.  And that would be the same computer on
10  which you inventoried files?
11     A.  Yes, correct.
12     Q.  Or that is the same computer in which
13  you created the list of missing files?
14     A.  That is correct.
15     Q.  And so any draft of those lists are no
16  longer available to us, is that right?
17     A.  Well, the drafts of the MetDirect
18  report I believe we still have those electronic
19  copies, yes.
20     Q.  But the drafts of your report are not
21  available?
22     A.  Not that I am aware of.
23     Q.  And the draft of this memo Exhibits 5
24  are not available?

DEPOSITION OF JERALD STIEDAMAN - June 4, 2009

Page 58

1    A.  No, not that I am aware of.
2    Q.  Take a look at Exhibit 5 Paragraph 2,
3  Ms. Davis stated that the files she wrote with
4  MetLife are still in the office.
5        Do you recall typing that, sir?
6    A.  I do.
7    Q.  And did you do anything to verify Ms.
8  Davis' statement that the files she wrote with
9  MetLife are still in the office?
10    A.  That would be what we cross referenced
11  for the files we had.
12    Q.  Well, now I am not talking about that.
13  I am talking about as of June 29, 2005 Ms. Davis
14  made this statement which you recorded?
15    A.  Yes.
16    Q.  The files she wrote with MetLife were
17  still in the office.  Did you do anything to
18  verify that statement?
19    A.  At that exact moment I don't know if we
20  did anything at that time.
21    Q.  Is there some reason why you didn't
22  take any action to determine whether or not Ms.
23  Davis was being truthful when she said that the
24  files she wrote with MetLife are still in the

Page 59

1  office?
2    A.  I would have gone on the direction of
3  the manager, not something I would certainly do
4  on my own.
5    Q.  But I thought you earlier testified
6  that you popped open Laura Davis' files?
7    A.  I didn't do inventory.  The filing
8  cabinet was empty except for marketing
9  materials, but was inventory done?  No, it was
10  not.
11    Q.  And did you just look in one file?
12    A.  She had --
13    Q.  File drawer?
14    A.  She had a row of them.
15    Q.  Did you look in every single one?
16    A.  Yes, we did.  But we did not inventory
17  at that time.
18    Q.  So, there could have been files?
19    A.  Inventory was done after that, not at
20  that time.
21    Q.  But I am saying that at the time you
22  popped open her file --
23    A.  No, inventory -- correct.
24    Q.  No inventory was taken and, in fact,

Page 60

1  her are statement that the files she wrote with
2  Met are still in the office could have been
3  true, because you didn't do inventory at that
4  time to determine whether or not her statement
5  was correct?
6    A.  At that time no.  The comprehensive
7  inventory was done later on.
8    Q.  And I understand that this document the
9  summary of conversation between you and Gregory
10  and Laura Davis which you prepared was done at
11  the request of counsel, is that correct?
12    A.  Dean Gregory walked into my office,said
13  come into my office, take good notes, you are
14  going to need to summarize this conversation.  I
15  didn't know at whose direction it was beyond
16  that.
17    Q.  And once you had taken the notes and
18  prepared this memorandum, what did you do with
19  it?
20    A.  Sent it down to Dean Gregory, and from
21  there I would imagine he passed it on to
22  counsel.
23    Q.  Well, do you know what he did with it?
24    A.  I cannot guess what he did with it.

Page 61

1    Q.  Okay.
2        And once you gave it to Mr. Gregory did
3  he provide you with any comment on this summary?
4    A.  No, there was no, no nothing else done.
5    Q.  And from that day which was June 29,
6  2005, 2005 to this day have you had any
7  conversation at all with Mr. Gregory with
8  respect to this?
9    A.  With this conversation --.
10    Q.  With this memo Exhibit 5?
11    A.  I can't recall any, no.
12    Q.  He didn't ask you to follow up to
13  determine whether any of the statements that Ms.
14  Davis had provided during this conversation were
15  factually accurate?
16    A.  The follow up took place later.
17    Q.  Didn't do any follow-up to see whether
18  or not she did not retain client files on joint
19  work case if she wasn't really a producer?
20    A.  I don't recall that.
21    Q.  And later on did you ever do any
22  investigation to determine whether or not Ms.
23  Davis did not retain client files on joint work
24  cases if she wasn't a producer?

# EXHIBIT 6

IN THE CIRCUIT COURT FOR THE EIGHTEENTH JUDICIAL CIRCUIT
DuPAGE COUNTY, ILLINOIS

METROPOLITAN LIFE INSURANCE )
COMPANY, )
                           )
           Plaintiff, )
                           )
      v. )         Case No 05 CH 0912
                           )
JOHN C. DESIMONE, THE GUARDIAN LIFE )
INSURANCE COMPANY OF AMERICA, )
MICHAEL K. O'MALLEY, ANNETTE )
HAMMORTREE, LAURA L. DAVIS, MARY )
PATRICIA ERNST, KATIE LEMMING, and )
JOHN DOES 1-10, )
                           )
           Defendants. )

## MOTION OF DEFENDANT LAURA L. DAVIS TO REQUIRE RETURN OF PERSONAL COMPUTERS

NOW COMES Defendant LAURA L. DAVIS ("Davis"), by and through her attorneys Piccione, Keeley & Associates, Ltd., and for her Motion to Require the Plaintiff to return her personal computers, states as follows:

1.     On or about June 30, 2005, DAVIS' employment with Plaintiff terminated.

2.     On or about June 30, 2005, DAVIS turned over to Plaintiff DAVIS' three (3) personal computers, including two desktop computers and a laptop computer, pursuant to Plaintiff's demand to de-image her computers of MetLife software.

3.     On or about June 30, 2005, Plaintiff represented to DAVIS that the de-imaging process of her three personal computers would take a couple days.

4.     To date, twelve (12) days after DAVIS provided her three personal computers to

PICCIONE, KEELEY
& ASSOCIATES, LTD.
!S COUNTY FARM RD.
HEATON, IL 60187-4523
FACSIMILE
630/653-8029
TELEPHONE
630/653-8000

1

Plaintiff, and despite numerous demands by DAVIS and counsel for DAVIS, Plaintiff has failed to return DAVIS' personally-owned computers to her.

5.  On or about July 6, 2005, counsel for DAVIS demanded that her computers be returned to her by July 8, 2005. A copy of counsel for DAVIS' correspondence dated July 6, 2005 is attached and incorporated herein as Exhibit 1.

6.  Counsel for Plaintiff responded to the July 6, 2005 correspondence and represented to counsel for DAVIS that the computers would be returned to DAVIS by Tuesday, July 12, 2005.

7.  Plaintiff failed to return DAVIS' computers on July 12, 2005 and counsel for Plaintiff stated that they were still checking on the status of the computers which were sent to New York.

8.  DAVIS' computers are necessary and crucial for her to operate in her business.

9.  Another representative of Plaintiff, who was terminated, had his computer de-imaged by Plaintiff in its Rockford, Illinois office in less than two (2) hours. Plaintiff has a disc that removes its programs for computers.

10.  ANNETTE HAMMORTREE, another Defendant in this action, had her personal computer de-imaged in the State of Illinois in a couple of hours by an outside computer specialist.

11.  Given the fact that the Court has ordered that the Defendants return all of Plaintiff's documents to Plaintiff, it is only fair that Plaintiff be required to return DAVIS' three computers, which are owned by DAVIS and not Plaintiff.

12.  Given the fact that Plaintiff sent DAVIS' computers to New York and has had her

PICCIONE, KEELEY & ASSOCIATES, LTD. 1 S. COUNTY FARM RD. WHEATON, IL 60187-4523 FACSIMILE 630/653-8029 TELEPHONE 630/653-8000

2

computers for almost two (2) weeks, we believe Plaintiff is searching DAVIS' personal computers. This would be improper and potentially an invasion of privacy as DAVIS gave Plaintiff permission only to de-image her computers of Plaintiff's software and Plaintiff never issued a subpoena to have access to all of DAVIS' personal files on her computers.

WHEREFORE, Defendant LAURA L. DAVIS, respectfully requests this Honorable Court to enter the following relief:

A.    An Order requiring Plaintiff to return to counsel for LAURA L. DAVIS all three (3) of her personal computers, including the two desktop computers and laptop computer to the law firm of Piccione, Keeley & Associates, Ltd. within two (2) days; and

B.    And any other relief this Court deems just and proper.

Dated: July 12, 2005

Patrick C. Keeley
One of the Attorneys for Defendants, John C. DeSimone, Annette Hammortree, Laura L. Davis, Mary Patricia Ernst and Katie Lemming

PICCIONE, KEELEY & ASSOCIATES, LTD. Attorneys of Record for Defendants, John C. DeSimone, Annette Hammortree, Laura L. Davis, Mary Patricia Ernst and Katie Lemming

Atty. No. 66178

J:\LIT\Hammortree\p\MotionDavis071205.doc/sp

PICCIONE, KEELEY & ASSOCIATES, LTD. 1 S. COUNTY FARM RD. HEATON, IL 60187-4523 FACSIMILE 630/653-9029 TELEPHONE 630/653-5000

3

**EXHIBIT 7**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 06 C 5812 |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, O'M & ASSOCIATES LLC, DBA O'MALLEY & ASSOCIATES, | ) ) ) ) ) | Judge Charles R. Norgle Magistrate Judge Martin C. Ashman |
| Defendants. | ) | |

**DECLARATION OF LAURA DAVIS**
**IN SUPPORT OF GUARDIAN'S MOTION TO COMPEL**

I, Laura Davis, declare, under penalty of perjury, as follows:

1.     On June 30, 2005, I completed my tenure as an employee of the plaintiff Metropolitan Life Insurance Company ("MetLife") at MetLife's Downers Grove, Illinois agency.

2.     On June 30, 2005, I visited MetLife's Downer Grove office to comply with a request from office Managing Director Dean Gregory that I return for inspection approximately 10 boxes of materials that I arranged to have removed from the office days earlier.  I met with Mr. Gregory who asked that the materials be placed in his office for inspection.  During my visit, MetLife personnel inspected the contents of each box, removed certain items and returned to my possession most of the material.  MetLife provided me with a handwritten inventory of the items returned to my possession; however, MetLife did not provide me with an inventory of the items that it removed during the visit.

3.      Upon my departure from MetLife, I left client files at MetLife's offices. MetLife did not provide me with an inventory of those client files.

4.      On June 30, 2005, I also surrendered to MetLife's agency management possession of three computers which I owned and used during my tenure at MetLife. I did not receive a receipt acknowledging MetLife's possession of the computers.

5.      MetLife retained my computers for approximately two weeks and, upon their return, inspection revealed that all MetLife data and all software programs had been deleted from my computers. MetLife did not provide me or my counsel with copies of the material deleted nor an inventory of the data removed from the computers.

Dated: ___8-28-09___, 2009        _____

                                    Laura Davis

                                    I declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct.

2

**EXHIBIT 8**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 06 C 5812 |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, O'M & ASSOCIATES LLC, DBA O'MALLEY & ASSOCIATES, | ) ) ) ) ) | Judge Charles R. Norgle Magistrate Judge Martin C. Ashman |
| Defendants. | ) | |

## DECLARATION OF ANNETTE HAMMORTREE
## IN SUPPORT OF GUARDIAN'S MOTION TO COMPEL

I, Annette Hammortree, declare, under penalty of perjury, as follows:

1.      On June 30, 2005, I resigned as an employee of the plaintiff Metropolitan Life Insurance Company ("MetLife") at MetLife's Downers Grove, Illinois agency.

2.      On June 29, 2005, immediately prior to my resignation, I received a request from MetLife Managing Director Dean Gregory to deliver to MetLife's Downers Grove office client files which I had permission to maintain at my detached office in Crystal Lake, Illinois. On June 30, 2009, in compliance with that request, I delivered several boxes of files to MetLife's Downers Grove office. During the time that I was there, I did not observe, and I am not aware that any MetLife personnel reviewed the contents of those boxes. MetLife did not provide me with an inventory of the materials that I delivered.

3.     Upon my resignation, MetLife retained possession of two desktop computers which my assistants used at MetLife.  I did not receive an inventory of the data on those computers.

Dated:  _____8|28_____, 2009

_Annette Hammortree_
Annette Hammortree

I declare under penalty of perjury,
pursuant to 28 U.S.C. §1746, that
the foregoing is true and correct.

2

# EXHIBIT 9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) ) | Case No. 06 C 5812 |
| Plaintiff, | ) ) ) | Judge Charles R. Norgle |
| v. | ) ) | Magistrate Judge Martin C. Ashman |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, O'M & ASSOCIATES LLC, DBA O'MALLEY & ASSOCIATES | ) ) ) ) ) | |
| Defendants. | ) | |

## METLIFE'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR ENTRY OF PROTECTIVE ORDER

**I.    Introduction**

Guardian Life Insurance of America ("Guardian") has served a 10-page, 29-category 30(b)(6) notice which primarily, and improperly, challenges MetLife to designate a witness capable of recalling 6,000 pages of testimony and 10,000 pages of documentary evidence in deposition. This is not the purpose of 30(b)(6) deposition. See Kent Sinclair and Roger P. Fendrich, Discovering Corporate Knowledge and Contentions: Rethinking Rule 30(b)(6) and Alternative Mechanisms, 50 Ala. L. Rev. 651, 701 (1999)(explaining that the purpose of Rule 30(b)(6) does not support the discovering party's request asking a corporation "to produce every document, and recall every fact, conception, intention, understanding, belief and sense impression relevant to all of the issues in the case")(citations and quotations omitted). MetLife has offered to provide Guardian with all the information it seeks via answers to interrogatories and responses to document requests. But Guardian refuses. Because their request is clearly

that testimony, Guardian's counsel briefly questioned Wheeler about MetLife's theory of relief

(just 5 pages of testimony). Wheeler acknowledged he had no hand in McNally's restitution

analysis. (11/29/07 FINRA Hearing Tr., pp. 1558-59, attached as Exhibit T). In fact, Wheeler

testified he never even met McNally:

> Q.    Have you had any conversations at all with MetLife's
>       expert for this case?
>
> A.    I have not.
>
> Q.    Do you know who MetLife's expert is?
>
> A.    I do not.

(Id. at 1559). At that point, Guardian's counsel moved on. MetLife's theory of relief has not

changed since Wheeler testified in the FINRA arbitration. Guardian's counsel's cursory

examination of Wheeler on this issue clearly shows Guardian did not view Mr. Wheeler's

testimony as critical then, and it should not be allowed change positions now.

### C.    *Guardian Is Not Entitled To William Tucek's Deposition.*

Guardian also seeks to depose William Tucek, a former member of MetLife's IT

Department, who currently resides in Indianapolis, Indiana. (Exh. D, Tucek Subpoena).

MetLife identified Tucek in response to the FINRA Respondents' broad information request

seeking the identity of MetLife employees "who conducted an analysis or investigation of

computer records, computer equipment, electronic data, data storage equipment, email, and/or

network activity of any Respondent from January, 2005 to the present." (MetLife's

Supplemental Answer to Respondents' First Information Request No. 13, attached as Exhibit U).

Guardian should be precluded from deposing Tucek now for two reasons.

*First*, Tucek has no relevant information. His role in this case was purely ministerial. At

the direction of MetLife's counsel, Tucek gathered emails from the former agents' inboxes and

- 18 -

put them in a database for MetLife's counsel to review. He did not select whose emails should be reviewed or any parameters regarding the scope of the review. Nor did Tucek perform any type of independent analysis.

*Second*, even if Tucek has relevant information, his testimony will likely be cumulative of MetLife's Rule 30(b)(6) witnesses testimony. MetLife has informed Guardian's counsel that MetLife will designate a Rule 30(b)(6) witness to testify about any analysis of MetLife's computer systems in relation to this case. This individual will be capable of explaining the process Tucek used in gathering emails. Notwithstanding MetLife's proffer, Guardian insists on deposing this former MetLife employee in Indianapolis, Indiana. At the very least, this Court should hold Tucek's deposition in abeyance until after MetLife produces a Rule 30(b)(6) witness on the subject.

## IV.    Conclusion

For the forgoing reasons, this Court should grant MetLife's motion for entry of a protective order striking topic Nos. 1-2, 9-20, and 26-28 of Guardian's Rule 30(b)(6) deposition notice and prohibiting Defendants from deposing William Wheeler, Dean Gregory and Deborah Covey Forsythe, and William Tucek.

Respectfully submitted,

/s/ Rachel Cowen
Michael J. Sheehan
Rachel B. Cowen
Drinker Biddle & Reath LLP
191 N. Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone: 312.569.1000

Dated:  July 20, 2009                    COUNSEL FOR PLAINTIFF

# EXHIBIT 10

1    TRANSCRIBED FROM DIGITAL RECORDING

2              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
3                      EASTERN DIVISION

4    METROPOLITAN LIFE INSURANCE COMPANY, )
                                          )
5              Plaintiff,                 )
                                          )
6         vs.                             )  No. 06 C 5812
                                          )
7    THE GUARDIAN LIFE INSURANCE COMPANY  )
     OF AMERICA, O'M & ASSOCIATES LLC,    )
8    d/b/a O'Malley & Associates,         )  Chicago, Illinois
                                          )  July 7, 2009
9              Defendants.                )  10:26 A.M.

10         TRANSCRIPT OF PROCEEDINGS - Status and Motions
       BEFORE THE HONORABLE MARTIN C. ASHMAN, Magistrate Judge
11
     APPEARANCES:
12
     For the Plaintiff:       DRINKER BIDDLE & REATH LLP
13                            191 North Wacker Drive
                              Suite 3700
14                            Chicago, Illinois  60606
                              BY:  MR. MICHAEL JAMES SHEEHAN
15                                 MS. RACHEL BETH COWEN

16   For Defendant Guardian:  WINSTON & STRAWN LLP
                              35 West Wacker Drive
17                            Chicago, Illinois  60601-9703
                              BY:  MR. KIMBALL RICHARD ANDERSON
18                                 MR. MARLON EMILE LUTFIYYA

19   ALSO PRESENT:           Ms. Kara Kapp

20
                      PAMELA S. WARREN, CSR, RPR
21                      Official Court Reporter
                       219 South Dearborn Street
22                            Room 1928
                       Chicago, Illinois   60604
23                         (312) 294-8907

24
     NOTE:  Please notify of correct speaker identification.
25

1    **APPEARANCES:    (Continued)**

2

3    For Defendant O'M:          LOCKE LORD BISSELL & LIDDELL LLP
                                  111 South Wacker Drive
                                  Chicago, Illinois  60606
4                                 BY:   MR. TERRENCE PATRICK CANADE
                                        MR. STEVEN TODD WHITMER
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    THE COURT:  I read the docket.  And I don't see any

2    closing -- any order which closes discovery on June 1 -- I

3    think it was June 1.

4    MS. COWEN:  There is no order?

5    MR. KIMBALL:  There wasn't --

6    THE COURT:  I don't see any order.

7    MR. KIMBALL:  There wasn't any, which is our point

8    precisely.  We'd like to go ahead with these depositions, one

9    of which is their damage expert that they have submitted a

10   damage expert report under Rule 26 a month ago.

11   MS. COWEN:  My suggestion was going to be that you set

12   this for a status.  Between now and the status maybe the

13   parties can try and work out an appropriate discovery schedule

14   and try and craft what is going to be the scope of discovery.

15   Is it going to be unfettered depositions?  Is it going to be

16   some agreement that we're not going to redo?

17   THE COURT:  All right.  Okay.

18   MS. COWEN:  And then we'll come back before your Honor

19   and --

20   THE COURT:  I think --

21   MS. COWEN:  -- at the status.

22   THE COURT:  I think that is correct.  What is needed

23   is a conference -- I forget, the Rule 16 -- Rule 16

24   conference.  And that's the way you set up the rest of this

25   discovery.  I don't know if there is -- if you had that --

1        MR. KIMBALL:  We had it, your Honor.

2        THE COURT:  You had it?

3        MR. KIMBALL:  We had it.

4        THE COURT:  -- at the beginning.  But it is disrupted

5   now.

6        MR. KIMBALL:  We had it before we filed these motions,

7   fairly shortly before we filed these motions.  And --

8        THE COURT:  But you --

9        MS. COWEN:  We have not --

10        MR. KIMBALL:  -- the plaintiff's position was no

11   discovery at all of MetLife based on what -- their view that

12   there was a June 1 discovery cutoff.  Our view is that there

13   was never, ever such a cutoff.

14        MR. SHEEHAN:  Your Honor --

15        THE COURT:  There is no --

16        MR. SHEEHAN:  Your Honor --

17        THE COURT:  -- cutoff, as far as I'm concerned.  I

18   have read all the papers on that.  There is no cutoff, no June

19   1 cutoff.

20        I read everything that you folks submitted, and I

21   cannot find a June 1 cutoff.  Therefore there isn't any.

22   Okay?  Therefore all discovery is still open.  That takes care

23   of a lot of problems, I think.

24        MR. KIMBALL:  That takes care of really all of our

25   problems, I think.

1          THE COURT:  Okay.  That's fine.

2          Okay.  Good.  Now let's go off the record for a

3   moment.

4          (Discussion off the record.)

5          (Which concluded the proceedings in the above-entitled

6   matter.)

7                        CERTIFICATE

8          I HEREBY CERTIFY that the foregoing is a true, correct

9   and complete transcript of the proceedings had at the hearing

10  of the aforementioned cause on the day and date hereof.

11

12  */s/Pamela S. Warren*                    July 8, 2009
    Official Court Reporter                    Date
13  United States District Court
    Northern District of Illinois
14  Eastern Division

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 11



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

METROPOLITAN LIFE
INSURANCE COMPANY,

                    Plaintiff,

        v.

THE GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,
O'M & ASSOCIATES LLC, DBA
O'MALLEY & ASSOCIATES

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)

Case No.: 06 C 5812

Judge Charles R. Norgle

Magistrate Judge Martin C. Ashman

## <u>ORDER</u>

Pursuant to a motion hearing held on July 7, 2009, it is hereby ordered:

1.     The Guardian Life Insurance Company of America's ("Guardian") Motion to Strike and for Other Relief (D.E. 177) is denied without prejudice.

2.     Metropolitan Life Insurance Company's ("MetLife") Motion to Extend the Briefing Schedule On the Motions for Partial Summary Judgment and Sanctions (D.E. 171) is granted as follows.

        a.     On or before July 24, 2009, Defendants shall make images of the unallocated spaces on the "Hutch" and "Yoda" servers (collectively the "Server Images"), available for MetLife's review, pursuant to the previously agreed protocol used by the parties to review computer images;

        b.     On or before August 4, 2009, MetLife's expert Chad Gough shall complete his review of the Server Images;

1

c. If, as a result of Mr. Gough's review of the Server Images, Mr. Gough wishes to amend his expert report dated May 15, 2009, as supplemented on June 4, 2009, MetLife shall present a motion seeking leave to amend such report, along with the proposed amended report, for hearing on August 10, 2009 at 10:00 a.m.;

d. MetLife shall produce Mr. Gough for a deposition on or before August 18, 2009; and

e. Defendants shall respond to MetLife's Motion for Partial Summary Judgment on Count VI: Misappropriation of Trade Secrets (D.E. 111) and MetLife's Motion for Sanctions (D.E. 114) on or before the latter of August 28, 2009 or ten days after the completion of the deposition of Mr. Gough.

f. Any replies that MetLife may file in support of its Motion for Partial Summary Judgment on Count VI: Misappropriation of Trade Secrets or Motion for Sanctions are due fourteen days after Guardian's responses to those motions.

3. Guardian's Motion to Deem Requests Admitted, to Compel and for Other Relief (D.E. 188) will be withdrawn without prejudice provided that:

a. Guardian receives answers from MetLife to Guardian's Second Request for Admissions, dated May 31, 2009, by August 6, 2009;

b. Guardian receives responses from MetLife to Guardian's Second Request for Production of Documents, dated May 31, 2009, by August 6, 2009; and

2

      c.     Guardian receives from MetLife (1) all documents responsive to Guardian's Second Request for Production of Documents, dated May 31, 2009, and (2) a privilege log describing all documents MetLife has withheld from any production on the basis of privilege, by August 6, 2009.

4.     Guardian's Motion to Compel the Deposition of MetLife's Expert, Patrick McNally (D.E. 154), will be withdrawn without prejudice provided that MetLife produces Mr. McNally for deposition on or before August 28, 2009.

5.     By agreement of the parties, it is hereby further ordered:

      a.     Discovery does not close on June 1, 2009.

      b.     All discovery shall be completed on or before October 5, 2009.

      c.     The parties shall continue to adhere to a limit of ten (10) depositions per side.

      d.     MetLife shall produce Dan Shaffer for a deposition on or before July 31, 2009, but in any event no later than August 15, 2009.

      e.     With respect to Guardian's Motion to Compel Rule 30(b)(6) Testimony (D.E. 146) and Guardian's Motion to Compel the Depositions of Dean Gregory, Deborah Covey Forsythe and William Wheeler (D.E. 158):

          (i)     On or before July 20, 2009, MetLife shall designate one or more witnesses to testify regarding the topics listed in Guardian's Notice of Rule 30(b)(6) deposition, dated May 26, 2009 ("Rule 30(b)(6) Notice");

          (ii)     The parties shall meet and confer on or before July 15, 2009 to resolve any differences that might arise in connection with

MetLife's response to Guardian's Rule 30(b)(6) Notice and Guardian's Motion to Compel the Depositions of Dean Gregory, Deborah Covey Forsythe and William Wheeler; and

(iii)   In the event that the parties are unable to resolve any differences that might arise in connection with Guardian's Rule 30(b)(6) Notice and/or Guardian's notices of the depositions of Dean Gregory, Deborah Covey Forsythe and William Wheeler, MetLife shall file a motion for a protective order on or before July 20, 2009. Defendants must submit any written response to such a motion on or before July 27, 2009 and may seek a ruling on Guardian's Motion to Compel Rule 30(b)(6) testimony (D.E. 146). MetLife must submit any reply in support of a motion for a protective order on or before August 3, 2009.

6.   This matter is set for status on July 20, 2009 at 10:15 a.m.

ENTERED:

Dated: **JUL 2 0 2009**

Magistrate Judge Martin C. Ashman

4

# EXHIBIT 12

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| METROPOLITAN LIFE<br>INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06 C 5812 |
| | ) | |
| THE GUARDIAN LIFE INSURANCE | ) | Judge Charles R. Norgle |
| COMPANY OF AMERICA, | ) | Magistrate Judge |
| O'M & ASSOCIATES LLC, DBA | ) | Martin C. Ashman |
| O'MALLEY & ASSOCIATES | ) | |
| | ) | |
| Defendants. | ) | |

## MetLife's Supplemental Responses to
## Guardian's Second Request For Admissions

Plaintiff Metropolitan Life Insurance Company ("MetLife") responds to Defendant The

Guardian Life Insurance Company of America's ("Guardian") Second Request For Admissions

as follows:

### GENERAL OBJECTIONS

MetLife objects to Guardian's Instructions and Definitions to the extent they impose

burdens and requirements that are different from, or broader than those imposed by the Federal

Rules of Civil Procedure.

### RESPONSES

1.      MetLife presently does not have in its possession a copy of the data or other
information maintained on the hard drives of all desktop and/or laptop computers supplied by
MetLife to Jeffrey Adler for use in connection with his employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Mr. Adler's hard

drive at the time of his resignation because every bite of data on Mr. Adler's desktop and/or

laptop computers was not relevant to this litigation. MetLife adds that information on Mr. Adler's computers may have been preserved elsewhere and that absent a more specific description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

2.    MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Ann Beck for use in connection with her employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Ms. Beck's hard drive at the time of his resignation because every bite of data on Ms. Beck's desktop and/or laptop computers was not relevant to this litigation. MetLife adds that information on Ms. Beck's computers may have been preserved elsewhere and that absent a more specific description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

3.    MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Jeff Bishop for use in connection with his employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Mr. Bishop's hard drive at the time of his resignation because every bite of data on Mr. Bishop's desktop and/or laptop computers was not relevant to this litigation. MetLife adds that information on Mr. Bishop's computers may have been preserved elsewhere and that absent a more specific description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

4.    MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Bruce Bitter for use in connection with his employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Mr. Bitter's hard drive at the time of his resignation because every bite of data on Mr. Bitter's desktop and/or laptop computers was not relevant to this litigation. MetLife adds that information on Mr. Bitter's computers may have been preserved elsewhere and that absent a more specific description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

5.   MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Ann Brennan for use in connection with her employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Ms. Brennan's hard drive at the time of his resignation because every bite of data on Ms. Brennan's desktop and/or laptop computers was not relevant to this litigation. MetLife adds that information on Ms. Brennan's computers may have been preserved elsewhere and that absent a more specific description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

6.   MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Laura Davis for use in connection with her employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Ms. Davis' hard drive at the time of his resignation because every bite of data on Ms. Davis' desktop and/or laptop computers was not relevant to this litigation. MetLife adds that information on Ms. Davis' computers may have been preserved elsewhere and that absent a more specific description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

7.     MetLife presently does not have in its possession a copy of the data or other infomation maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to John DeSimone.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Mr. DeSimone's hard

drive at the time of his resignation because every bite of data on Mr. DeSimone's desktop and/or

laptop computers was not relevant to this litigation. MetLife adds that information on Mr.

DeSimone's computers may have been preserved elsewhere and that absent a more specific

description of the information Defendants seek, MetLife cannot admit or deny whether it is in

possession of such data.

8.     MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Mary Patricia Ernst for use in connection with her employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Ms. Ernst's hard drive

at the time of his resignation because every bite of data on Ms. Ernst's desktop and/or laptop

computers was not relevant to this litigation. MetLife adds that information on Ms. Ernst's

computers may have been preserved elsewhere and that absent a more specific description of the

information Defendants seek, MetLife cannot admit or deny whether it is in possession of such

data.

9.     MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Annette Hammortree for use in connection with her employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Ms. Hammortree's

hard drive at the time of his resignation because every bite of data on Ms. Hammortree's desktop

and/or laptop computers was not relevant to this litigation. MetLife adds that information on Ms.

Hammortree's computers may have been preserved elsewhere and that absent a more specific

description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

10.    MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Richard Henson for use in connection with his employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Mr. Henson's hard drive at the time of his resignation because every bite of data on Mr. Henson's desktop and/or laptop computers was not relevant to this litigation. MetLife adds that information on Mr. Henson's computers may have been preserved elsewhere and that absent a more specific description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

11.    MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to James Hoeflinger for use in connection with his employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Mr. Hoeflinger's hard drive at the time of his resignation because every bite of data on Mr. Hoeflinger's desktop and/or laptop computers was not relevant to this litigation. MetLife adds that information on Mr. Hoeflinger's computers may have been preserved elsewhere and that absent a more specific description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

12.    MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Rhonda Jecman for use in connection with her employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Ms. Jecman's hard drive at the time of his resignation because every bite of data on Ms. Jecman's desktop and/or

laptop computers was not relevant to this litigation. MetLife adds that information on Ms.

Jecman's computers may have been preserved elsewhere and that absent a more specific

description of the information Defendants seek, MetLife cannot admit or deny whether it is in

possession of such data.

13. MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Justin LaMonica for use in connection with his employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Mr. LaMonica's hard

drive at the time of his resignation because every bite of data on Mr. LaMonica's desktop and/or

laptop computers was not relevant to this litigation. MetLife adds that information on Mr.

LaMonica's computers may have been preserved elsewhere and that absent a more specific

description of the information Defendants seek, MetLife cannot admit or deny whether it is in

possession of such data.

14. MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Tricia Overton for use in connection with his employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Ms. Overton's hard

drive at the time of his resignation because every bite of data on Ms. Overton's desktop and/or

laptop computers was not relevant to this litigation. MetLife adds that information on Ms.

Overton's computers may have been preserved elsewhere and that absent a more specific

description of the information Defendants seek, MetLife cannot admit or deny whether it is in

possession of such data.

15. MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Rathika Pathy for use in connection with her employment by MetLife.

6

**RESPONSE:** MetLife admits it did not make a bit by bit image of Ms. Pathy's hard drive at the time of his resignation because every bite of data on Ms. Pathy's desktop and/or laptop computers was not relevant to this litigation. MetLife adds that information on Ms. Pathy's computers may have been preserved elsewhere and that absent a more specific description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

16.     MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Vinay Phommachanh for use in connection with his employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Mr. Phommachanh's hard drive at the time of his resignation because every bite of data on Mr. Phommachanh's desktop and/or laptop computers was not relevant to this litigation. MetLife adds that information on Mr. Phommachanh's computers may have been preserved elsewhere and that absent a more specific description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

17.     MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Donald Sackow for use in connection with his employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Mr. Sackow's hard drive at the time of his resignation because every bite of data on Mr. Sackow's desktop and/or laptop computers was not relevant to this litigation. MetLife adds that information on Mr. Sackow's computers may have been preserved elsewhere and that absent a more specific description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

7

18.    MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Kurt Tuzinkewich for use in connection with his employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Mr. Tuzinkewich's hard drive at the time of his resignation because every bite of data on Mr. Tuzinkewich's desktop and/or laptop computers was not relevant to this litigation. MetLife adds that information on Mr. Tuzinkewich's computers may have been preserved elsewhere and that absent a more specific description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

19.    MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to James Wilbert for use in connection with his employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Mr. Wilbert's hard drive at the time of his resignation because every bite of data on Mr. Wilbert's desktop and/or laptop computers was not relevant to this litigation. MetLife adds that information on Mr. Wilbert's computers may have been preserved elsewhere and that absent a more specific description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

20.    MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Greg Zastrow for use in connection with his employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Mr. Zastrow's hard drive at the time of his resignation because every bite of data on Mr. Zastrow's desktop and/or laptop computers was not relevant to this litigation. MetLife adds that information on Mr. Zastrow's computers may have been preserved elsewhere and that absent a more specific

description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

      21.    MetLife presently does not have in its possession a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to Leo Zimmerman for use in connection with his employment by MetLife.

**RESPONSE:** MetLife admits it did not make a bit by bit image of Mr. Zimmerman's hard drive at the time of his resignation because every bite of data on Mr. Zimmerman's desktop and/or laptop computers was not relevant to this litigation. MetLife adds that information on Mr. Zimmerman's computers may have been preserved elsewhere and that absent a more specific description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

      22.    MetLife did not preserve all of the data maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to each of the individuals identified in the preceding paragraphs 1 through 21, following the termination of each such individuals' employment with MetLife in 2005.

**RESPONSE:** MetLife admits it did not make a bit by bit image of the hard drives for the desktop and/or laptop computers supplied to the individuals identified in Paragraphs 1 through 21 at the time of their resignations because every bite of data on their computers was not relevant to this litigation. MetLife adds that information on these individuals' computers may have been preserved elsewhere and that absent a more specific description of the information Defendants seek, MetLife cannot admit or deny whether it is in possession of such data.

      23.    MetLife did not undertake any forensic analysis of the MetLife computers and/or servers located at MetLife's Downers Grove Agency during July 2005, to determine which, if any, of the individuals identified in the preceding paragraphs 1 through 21, accessed the MetDirect database in May and June 2005 and downloaded and/or copied MetDirect reports from that database.

**RESPONSE:** MetLife admits that it did not perform forensic analyses of the individuals'

MetLife computers to investigate their theft of MetDirect Reports, as the source of such

information was not their personal computers. MetLife further admits that no such investigation

was performed in July 2005. MetLife trusted that when Guardian and its counsel represented to

Judge Wheaton and MetLife that all MetLife materials had been returned, and when Guardian

and its counsel continued to represent before this Court that all MetLife materials had been

returned, counsel's representations were truthful.

Respectfully submitted,

Michael J. Sheehan
Rachel B. Cowen
Richard S. Cozza
Drinker Biddle & Reath LLP
191 N. Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone: 312.569.1000

Dated: August 6, 2009                          COUNSEL FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I certify that on this 6th day of August, 2009 I served via electronic and overnight mail the

foregoing **MetLife's Supplemental Responses to Guardian's Second Request for Admissions**

upon the following:

Terrence P. Canade
Steven T. Whitmer
Bryan Deaton
Locke, Lord, Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606-4410
(312) 443-0336 Fax
swhitmer@lockelord.com
tcanade@lockelord.com

Kimball Anderson
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5858
kanderson@winston.com

Virginia Richard
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
(212) 294-4639
vrichard@winston.com

_____
Richard S. Cozza

CH01/ 25352978.4

11

# EXHIBIT 13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| METROPOLITAN LIFE<br>INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE GUARDIAN LIFE INSURANCE<br>COMPANY OF AMERICA,<br>O'M & ASSOCIATES LLC, DBA<br>O'MALLEY & ASSOCIATES<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 06 C 5812

Judge Charles R. Norgle
Magistrate Judge
Martin C. Ashman

## MetLife's Supplemental Responses to Guardian's
## Second Request For Production of Documents

Plaintiff Metropolitan Life Insurance Company ("MetLife") responds to Defendant The

Guardian Life Insurance Company of America's ("Guardian") Second Request For Production of

Documents as follows:

### PRELIMINARY STATEMENT

MetLife is continuing its investigation and reserves the right to rely on any facts,

documents, or other evidence that might come to its attention at a later time. MetLife's

responses to Guardian's Second Request for Production are based upon information known at

this time, and MetLife sets forth these answers without prejudice to its right to supplement these

responses or assert additional objections should it discovery additional information or grounds

for objection. MetLife specifically reserves its right to supplement or amend these responses at

any time before trial.

## GENERAL OBJECTIONS

MetLife asserts the following General Objections to each specific Request, as if incorporated and set forth below in response to each Request:

1.     MetLife objects to Guardian's Instructions and Definitions to the extent they impose burdens and requirements that are different from, or broader than those imposed by the Federal Rules of Civil Procedure. By responding to any Request, MetLife does not adopt the definitions or instructions set forth in Guardian's Requests.

2.     MetLife objects to Guardian's Requests to the extent they are cumulative of those made by Guardian or its subsidiary, Park Avenue Securities, LLC, in the companion FINRA arbitration styled *Metropolitan Life Insurance Company v. Guardian Life Insurance Company of America*, et al., FINRA No. 05-03694. Pursuant to agreement by the parties, all documents exchanged in the arbitration are considered exchanged in this matter as well.

3.     MetLife objects to Guardian's Requests to the extent they ask MetLife to identify documents which were produced to MetLife by Guardian, Park Avenue Securities, or any of the individual respondents in the companion arbitration which support its claims. Rule 34 does not impose any such burden. MetLife has not done so.

4.     MetLife objects to Guardian's requests to the extent the seek information protected by the attorney-client privilege, the work product doctrine or other applicable privileges, immunities or doctrines. Unless indicted otherwise, the production of any such protected information shall be deemed inadvertent and shall not be construed to constitute a waiver of any applicable protection or privilege.

CH01/ 25352975.3

## RESPONSES TO REQUESTS FOR PRODUCTION

1.     All documents referring or relating to MetLife's review, examination, consideration and/or analysis of the productivity or production targets set for each of the following individuals during the period October 2004 through and including October 2005: (a) Jeffrey Adler; (b) Ann Beck; (c) Jeff Bishop; (d) Bruce Bitter; (e) Ann Brennan; (f) Laura Davis; (g) John DeSimone; (h) Mary Patricia Ernst; (i) Annette Hammortree; (j) Richard Henson; (k) James Hoeflinger; (l) Rhonda Jecman; (m) Justin LaMonica; (n) Tricia Overton; (o) Rathika Pathy; (p) Vinay Phommachanh; (q) Donald Sackow; (r) Kurt Tuzinkewich; (s) James Wilbert; (t) Greg Zastrow; and (u) Leo Zimmerman.

**RESPONSE:** MetLife did not set individual production targets for these individuals, so there

are no responsive documents.  Documents reflecting sales production of these individuals are

contained in the run rate reports that have been produced as bates numbers D0014-0229.  Beyond

that, MetLife objects to this Request as not reasonably calculated to lead to the discovery of

admissible evidence and as overbroad to the extent it seeks "all" documents.

2.     All documents which form the factual basis for Plaintiff's allegation that "Guardian knew O'Malley was subject to the 16449 agreement" as alleged in paragraph 21 of the Amended Complaint.

**RESPONSE:** MetLife has produced responsive documents in its possession bates labeled

A0309.  Beyond that, see General Objection No. 3.

3.     All documents which form the factual basis for Plaintiff's allegation that "Guardian encourage[d]" "O'Malley [to] recruit[]" a team of his employees to" "join Guardian's competing office" as alleged in paragraph 22 of the Amended Complaint.

**RESPONSE:** MetLife has produced responsive documents in its possession bates labeled

A0353, A2013, A2014, B0001-0002, N0014, and Respondents' Exhibit No. 122.  Beyond that,

see General Objection No. 3.

4.     All documents which form the factual basis for Plaintiff's allegation that "Guardian encourage[d]" "O'Malley [to] recruit[]" a team of his employees to steal MetLife's client files" as alleged in paragraph 22 of the Amended Complaint.

**RESPONSE:** See MetLife's Response to Request No. 3. MetLife has produced additional responsive documents in its possession bates labeled B0003-0016, B0017-0020, B0021-0026, B0027, B0039-0058, B0059-0097, B0098-0108, H2144-2146, Claimant's Exhibit No. 65, and Respondents' Exhibit No. 122. Beyond that, see General Objection No. 3.

5.     All documents which form the factual basis for Plaintiff's allegation that "Guardian encourage[d]" "O'Malley [to] recruit[] a team of his employees to" use "stolen client files to solicit MetLife customers" as alleged in paragraph 22 of the Amended Complaint.

**RESPONSE:** MetLife has produced responsive documents in its possession bates labeled B0003-0016, B0017-0020, B0021-0026, B0027, B0039-0058, B0059-0097, B0098-0108, H2144-2146, Claimant's Exhibit No. 65, and Respondents' Exhibit No. 122. Beyond that, see General Objection No. 3.

6.     All documents which form the factual basis for Plaintiff's allegation that Guardian "knew that most of the MetLife employees" "solicited were parties to 16449 agreements which prohibited them from soliciting MetLife clients or employees for 18 months" as alleged in paragraph 22 of the Amended Complaint.

**RESPONSE:** MetLife has produced responsive documents in its possession bates labeled A0309, A0353, A1310, A0743, A2091, A2092, A2093, A2094, and Claimant's Exhibits Nos. 1(d)-1(n). Beyond that, see General Objection No. 3.

7.     All documents which support Plaintiff's allegation that John DeSimone, Laura Davis and/or Mary Patricia Ernst were agents of Guardian at any time prior to July 1, 2005.

**RESPONSE:** MetLife has produced responsive documents in its possession bates labeled A1056-1061, A1635-1645, A1646-1652, B0001-0002, B0003-0016, B0017-0019, B0020, B0098-B0108, and B0109-0201. Beyond that, see General Objection No. 3.

-4-

8.      All documents reflecting any list, index and/or inventory of the hard copy client files maintained at the MetLife Downers Grove agency at any time during the period January 1, 2005 through and including October 1, 2005.

**RESPONSE:** MetLife did not maintain any list, index or inventory of all the hard copy client

files maintained at the MetLife Downers Grove agency during the period of January 1, 2005

through October 1, 2005. Nevertheless, see documents bates labeled B0003-0016, B0098-

B0108, and B0109-0201. Beyond that, see General Objection No. 3.

9.      All documents referring or relating to the examination of files undertaken by MetLife representatives during July 2005 at the offices of Piccone, Keeley & Associates, including but not limited to any handwritten or electronic notes taken during the review and any and all drafts of the document entitled "File Inventory."

**RESPONSE:** MetLife has produced responsive documents in its possession bates labeled

B0003-0016, B0098-B0108, and B0109-0201. Beyond that, see General Objection No. 3.

10.      All documents reflecting Guardian's knowledge that client files were being removed from the Downers Grove agency by or on behalf of (a) John DeSimone; (b) Laura Davis; (c) Mary Patricia Ernst; and/or (d) Annette Hanunortree, at any time during the period May 1, 2005 through and including July 1, 2005.

**RESPONSE:** MetLife has produced responsive documents in its possession bates labeled

B0003-0016, B0017-0019, B0020, B0098-B0108, B0109-0201, G0001, and Respondents'

Exhibit No. 122. Beyond that, see General Objection No. 3.

11.      All documents which support Plaintiff's allegation that it was "harmed by the loss of [ ] client files" as alleged in paragraph 57 of the Amended Complaint.

**RESPONSE:** MetLife has produced responsive documents in its possession bates labeled

B0021-0026, B0059-0097, D0001-0499, E0002-0279, and R0001-0007. Beyond that, see

General Objection No. 3.

12.    All documents which support Plaintiff's allegation that Guardian has been "unjustly enriched" by the acts alleged in the Amended Complaint.

**RESPONSE:** MetLife has produced responsive documents in its possession bates labeled

A0309, A1310, A0743, A2091-2094, B0003-0016, B0017-0020, B0021-0026, B0027, B0039-

0058, B0059-0097, B0098-0108, D0001-0499, E0002-0279, H2144-2146, and Claimant's

Exhibits Nos. 1(d)-1(n). Beyond that, see General Objection No. 3.


13.    All documents which support the allegations set forth in paragraph 44 of the Amended Complaint that Guardian knowingly aided and abetted Michael O'Malley in soliciting MetLife employees or customers.

**RESPONSE:** MetLife has produced responsive documents in its possession bates labeled

B0001-0002, B0039-0058, and B0059-0097. Beyond that, see General Objection No. 3.


14.    All documents which support Plaintiff's allegation that Guardian induced "former MetLife employees to repudiate the non-compete and non-solicitation provisions of their 16449 agreements" as alleged in paragraph 63 of the Amended Complaint.

**RESPONSE:** MetLife has produced responsive documents in its possession bates labeled

A0309, A1310, A0743, A2091, A2092, A2093, A2094, B0003-0016, B0017-0020, B0021-0026,

B0027, B0039-0058, B0059-0097, B0098-0108, B109-187, and G0001. Beyond that, see

General Objection No. 3.


15.    All documents reflecting or referring to MetLife's repeated demands that Guardian return any client files as alleged in paragraph 79 of the Amended Complaint.

**RESPONSE:** MetLife has produced responsive documents in its possession bates labeled

D0352, D0353-0359, and R0008-0009. Beyond that, see General Objection No. 3.


16.    All documents which support Plaintiff's allegation that Guardian is liable for the conduct alleged in Count VII of the Amended Complaint under a theory of respondeat superior.

**RESPONSE:** MetLife has produced responsive documents in its possession bates labeled

A0353, A2013-2014, B0001-0002B0003-0016, B0017-0020, B0021-0026, B0027, B0039-0058,

B0059-0097, B0098-0108, H2144-2146, Claimant's Exhibit No. 65, and Respondents' Exhibit

No. 122. Beyond that, see General Objection No. 3.

17.    All documents reflecting the steps taken by MetLife to notify customers of the loss of their personal information due to the breach of MetLife's security alleged in paragraph 69 of the Amended Complaint.

**RESPONSE:** MetLife objects to this request as not reasonably calculated to lead to the

discovery of admissible evidence and as overbroad to the extent it seeks "all" documents.

Subject to these objections, MetLife is unaware of any responsive documents in its possession.

18.    All documents reflecting the steps which MetLife has taken to mitigate the damages alleged in the Amended Complaint with respect to each cause of action.

**RESPONSE:** MetLife objects to this Request as not reasonably calculated to lead to the

discovery of admissible evidence and as overbroad to the extent it seeks "all" documents.

Subject to these objections, MetLife has produced responsive documents in its possession bates

labeled D0363-0388, E0001, and F0001-1661.

19.    All documents relating or referring to the security measures in place at the MetLife Downers Grove agency during the period January 1, 2005 through and including October 1, 2005, to maintain the security of the following: (a) customer names, addresses and phone numbers; (b) customer financial information; (c) customer insurance policy numbers; and (d) customer insurance policy documentation and investment portfolio information.

**RESPONSE:** MetLife has produced responsive documents in its possession bates labeled

B0017-19, B0020, G0001, and R0010-0489. Beyond that, see General Objection No. 3.

20.    All documents reflecting, relating or referring to any steps taken by MetLife to preserve the information maintained on the hard drives of all of the desktop and laptop computers supplied by MetLife to each of the following individuals for use in connection with their employment by MetLife: (a) Jeffrey Adler; (b) Ann Beck; (c) Jeff Bishop; (d) Bruce Bitter; (e) Ann Brennan; (f) Laura Davis; (g) John DeSimone; (h) Mary Patricia Ernst; (i) Annette Hammortree; (j) Richard Henson; (k) James Hoeflinger; (l) Rhonda Jecman; (m) Justin LaMonica; (n) Michael O'Malley; (o) Tricia Overton; (p) Rathika Pathy; (q) Vinay

Phonunachanh; (r) Donald Sackow; (s) Kurt Tuzinkewich; (t) James Wilbert; (u) Greg Zastrow; and (v) Leo Zimmerman.

**RESPONSE:** MetLife objects to this request as not reasonably calculated to lead to the

discovery of admissible evidence and as overbroad to the extent it seeks "all" documents.

Subject to these objections, MetLife is unaware of any responsive documents in its possession.


21.    All documents regarding any forensic analysis of computers and servers located at MetLife's Downers Grove Agency undertaken by or on behalf of MetLife during July 2005, to determine which, if any, of the individuals listed in paragraph 31 of MetLife's Amended Complaint accessed the MetDirect database in May and June 2005 and downloaded and/or copied MetDirect reports from that database.

**RESPONSE:** MetLife objects to this request as not reasonably calculated to lead to the

discovery of admissible evidence and as overbroad to the extent it seeks "all" documents.

Subject to these objections, MetLife is unaware of any responsive documents in its possession.


22.    Any and all litigation holds, document preservation notices and/or other communication(s) provided by MetLife to its personnel in connection with the claims asserted in this litigation from January 1, 2005, through the present.

**RESPONSE:** See General Objection No. 5: correspondence sent from MetLife's legal counsel

is privileged. Muro v. Target Corp., 2007 U.S. Dist. LEXIS 81776, at *33-34 (N.D. Ill. 2007)

(holding that communications of legal advice from corporate counsel to corporate employees

regarding document preservation [i.e., litigation hold notices] are privileged material). Beyond

that, MetLife objects to this Request as not reasonably calculated to lead to the discovery of

admissible evidence.

CH01/ 25352975.3

Respectfully submitted,

Michael J. Sheehan
Rachel B. Cowen
Richard S. Cozza
Drinker Biddle & Reath LLP
191 N. Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone: 312.569.1000

Dated: August 6, 2009                    COUNSEL FOR PLAINTIFF

CH01/ 25352975.3

## CERTIFICATE OF SERVICE

I certify that on this 6th Day of August, 2009 I served via electronic and overnight mail

the foregoing **MetLife's Supplemental Responses to Guardian's Second Request for**

**Production of Documents** upon the following:

Terrence P. Canade
Steven T. Whitmer
Bryan Deaton
Locke, Lord, Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606-4410
(312) 443-0336 Fax
swhitmer@lockelord.com
tcanade@lockelord.com

Kimball Anderson
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5858
kanderson@winston.com

Virginia Richard
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
(212) 294-4639
vrichard@winston.com

Richard S. Cozza

**EXHIBIT 14**

PRIVILEGE LOG - EMAILS

Metropolitan Life Insurance Co. v. The Guardian Life Insurance Co. of America,
O'M & Associates LLC, DBA O'Malley & Associates

| No. | Author/ Forwarded by | Recipients in Chain (reverse chronological order) | CC | Date | Doc. Type | Description | Privilege Asserted | Privilege Description |
|---|---|---|---|---|---|---|---|---|
| 1 | Forwarded by Debbie Covay, Director of Operations[1] <br><br> Initial author: Debbie Covay | Annette Bernstein, In-House Counsel <br> Kevin Dunphy, Outside Counsel | Dean Gregory, Managing Director | 10/5/2005 <br> 9/28/2005 <br> 9/23/2005 | Email chain | Emails sent to in-house and outside counsel regarding client inquiry. | Attorney-Client | Sent to in-house and outside counsel, at counsel's direction, to assist in investigation of litigation. |
| 2 | Forwarded by Debbie Covay <br><br> Initial author: Debbie Covay | Michael J Sheehan, Outside Counsel <br> Kevin Dunphy <br> Laura Ginter <br> Annette Bernstein <br> Debbie Covay | Debbie Covay <br> Dean Gregory <br> John Schrieffer, Sales | 9/20/2005 <br> 9/20/2005 <br> 9/20/2005 | Email chain | Emails sent to in-house and outside counsel regarding recapturing business. | Attorney-Client Work Product | Sent to in-house and outside counsel, at counsel's direction, to assist in investigation of litigation; reflects Bernstein's legal analysis regarding issue. |
| 3 | Author: William J. Willet, Corp. Customer Relations | Annette Bernstein | Debbie Covay | 8/11/2005 | Email | Email sent to in-house counsel regarding draft response to client complaint. | Attorney-Client | Sent to in-house counsel, at counsel's direction, for legal review. |
| 4 | Forwarded by Annette Bernstein <br><br> Initial authors: Jeanna Woods, Operations Manager | Michael Sheehan, Outside Counsel <br> Annette Bernstein | Jeanna Woods <br> Dean Mansavage <br> Debbie Covay <br> Dean Gregory | 8/18/2005 <br> 8/17/2005 | Email chain | Emails sent to in-house and outside counsel regarding customer complaint. | Attorney-Client Work Product | Sent to in-house and outside counsel, at counsel's direction, to assist in investigation of litigation; reflects Bernstein's legal strategy regarding litigation. |

[1] Unless otherwise indicated, all individuals referenced are MetLife employees.

| # | Author | To | CC | Date | Type | Description | Privilege | Comments |
|---|---|---|---|---|---|---|---|---|
| 5. | Author: Stephen Potts, Financial Planner | Meredith Sullivan, Internal Audit-Field Staff Meredith Sullivan | Debbie Covay | 8/04/2005 | Email | Email regarding customer complaint | Attorney-Client | Reflects advice provided by Annette Bernstein, in-house counsel |
| 6. | Forwarded by Debbie Covay Initial author: Charlene Inwiski | Kevin Dunphy Annette Bernstein Debbie Covay | | 8/4/2005 8/2/2005 | Email chain | Email sent to in-house and outside counsel regarding Jeff Bishop | Attorney-Client | Sent to in-house and outside counsel, at counsel's direction, to assist in investigation of litigation |
| 7. | Debbie Covay Initial author: Debbie Covay | Kevin Dunphy | Stephen Potts, Sales Dean Gregory | 7/29/2005 | Email | Email sent to outside counsel regarding customer concern over client file | Attorney-Client | Sent to outside counsel, at counsel's direction, to assist in investigation of litigation |
| 8. | Debbie Covay Initial author: Debbie Covay | Kevin Dunphy Annette Bernstein | Dean Gregory | 7/13/2005 | Email | Email sent to in-house and outside counsel regarding computer investigation | Attorney-Client | Sent to in-house and outside counsel, at counsel's direction, to assist in investigation of litigation |
| 9. | Naomi Neiman (Internal Legal Counsel) Initial author: Daniel Shaffer Director IB IT Tech. MetLife | Rachel Cowen, Outside Counsel Naomi Neiman Annette Bernstein | | 7/11/2005 | Email chain | Email to outside counsel regarding MetLife representative log-in information and orders | Attorney-Client | Sent to outside counsel, at counsel's direction, to assist in investigation of litigation Attorney-Client |
| 10. | Dean Gregory, Financial Planner | Annette Bernstein | Debbie Covay | 7/11/2005 | Email | Email to in-house counsel regarding O'Malley | Attorney-Client | Sent to in-house counsel regarding O'Malley and terminated reps |
| 11. | Debbie Covay | Annette Bernstein | Dean Gregory Debbie Covay (bcc) | 6/29/2005 | Email | Email to in-house counsel regarding missing client files | Attorney-Client | Sent to in-house counsel regarding Katie Lemming, former MetLife sales employee, and missing client files |
| 12. | Dean Gregory | Debbi Covay | Annette Bernstein Kevin Dunphy | 6/29/2005 | Email | Email regarding Patty Ernst and Laura Davis | Attorney-Client | Sent to in-house and outside counsel regarding Patty Ernst and Laura Davis |
| 13. | Forwarded by Annette Bernstein Initial author: Dean Gregory | William Tueck, IT | Melinda Herbst John Schrieffer Kevin Dunphy | 6/28/2005 6/28/2005 | Email chain | Emails regarding collection of electronic information | Attorney-Client | Sent to in-house and outside counsel, at counsel's direction, to assist in investigation of litigation |
| 14. | Annette Bernstein | William Tueck | Dean Gregory Michael Sheehan Kevin Dunphy | 6/21/2005 | Email | Emails regarding collection of electronic information | Attorney-Client | Reflects advice by in-house counsel regarding investigation of litigation |

**PRIVILEGE LOG - SPREADSHEETS**
Metropolitan Life Insurance Co. v. The Guardian Life Insurance Co. of America,
O'M & Associates LLC, DBA O'Malley & Associates

| No. | Type of Document | Author | Recipient | Date | Description of Document | Privilege Asserted | Description of Privilege |
|---|---|---|---|---|---|---|---|
| 1. | Spreadsheet | Dan Schaeffer, Director IB IT Tech. MetLife | Rachel Cowen | 11/26/2007 | Information for investigation of MetDirect usage. | Attorney-Client | Compiled for outside counsel, at counsel's direction, to assist in investigation of litigation. |
| 2. | Spreadsheet | Dan Schaeffer | Rachel Cowen | 11/26/2007 | Information for investigation of MetDirect usage. | Attorney-Client | Compiled for outside counsel, at counsel's direction, to assist in investigation of litigation. |
| 3. | Spreadsheet | Dan Schaeffer | Rachel Cowen | 11/26/2007 | Information for investigation of MetDirect usage. | Attorney-Client | Compiled for outside counsel, at counsel's direction, to assist in investigation of litigation. |
| 4. | Spreadsheet | Dan Schaeffer | Rachel Cowen | 11/26/2007 | Information for investigation of MetDirect usage. | Attorney-Client | Compiled for outside counsel, at counsel's direction, to assist in investigation of litigation. |
| 5. | Spreadsheet | Dan Schaeffer | Rachel Cowen | 11/26/2007 | Information for investigation of MetDirect usage. | Attorney-Client | Compiled for outside counsel, at counsel's direction, to assist in investigation of litigation. |
| 6. | Spreadsheet | Dan Schaeffer | Rachel Cowen | 11/26/2007 | Information for investigation of MetDirect usage. | Attorney-Client | Compiled for outside counsel, at counsel's direction, to assist in investigation of litigation. |
| 7. | Spreadsheet | Dan Schaeffer | Rachel Cowen | 11/26/2007 | Information for investigation of MetDirect usage. | Attorney-Client | Compiled for outside counsel, at counsel's direction, to assist in investigation of litigation. |
| 8. | Spreadsheet | Dan Schaeffer | Rachel Cowen | 11/26/2007 | Information for investigation of MetDirect usage. | Attorney-Client | Compiled for outside counsel, at counsel's direction, to assist in investigation of litigation. |
| 9. | Spreadsheet | Dan Schaeffer | Rachel Cowen | 11/26/2007 | Information for investigation of MetDirect usage. | Attorney-Client | Compiled for outside counsel, at counsel's direction, to assist in investigation of litigation. |
| 10. | Spreadsheet | Dan Schaeffer | Rachel Cowen | 11/26/2007 | Information for investigation of MetDirect usage. | Attorney-Client | Compiled for outside counsel, at counsel's direction, to assist in investigation of litigation. |
| 11. | Spreadsheet | Dan Schaeffer | Rachel Cowen | 11/26/2007 | Information for investigation of MetDirect usage. | Attorney-Client | Compiled for outside counsel, at counsel's direction, to assist in investigation of litigation. |
| 12. | Spreadsheet | Dan Schaeffer | Rachel Cowen | 11/26/2007 | Information for investigation of MetDirect usage. | Attorney-Client | Compiled for outside counsel, at counsel's direction, to assist in investigation of litigation. |
| 13. | Spreadsheet | Dan Schaeffer | Rachel Cowen | 11/26/2007 | Information for investigation of MetDirect usage. | Attorney-Client | Compiled for outside counsel, at counsel's direction, to assist in investigation of litigation. |
| 14. | Spreadsheet | Dan Schaeffer | Rachel Cowen | 11/26/2007 | Information for investigation of MetDirect usage. | Attorney-Client | Compiled for outside counsel, at counsel's direction, to assist in investigation of litigation. |

# EXHIBIT 15

# WINSTON & STRAWN LLP

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703
————
43 RUE DU RHONE
1204 GENEVA, SWITZERLAND
————
BUCKLERSBURY HOUSE
3 QUEEN VICTORIA STREET
LONDON, EC4N 8NH

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

(212) 294-6700

FACSIMILE (212) 294-4700
————
www.winston.com

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-154
————
21 AVENUE VICTOR HUGO
75116 PARIS, FRANCE
————
101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-58
————
1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

LORI J. VAN AUKEN
(212) 294-4707
lvanauken@winston.com

August 10, 2009

**BY E-MAIL**

Michael J. Sheehan
Drinker Biddle & Reath LLP
191 North Wacker Drive
Suite 3700
Chicago, Illinois 60606-1698

Re:  ***MetLife Insurance Co. v. The Guardian Life Ins. Co. of America,***
***et al.,* Case No. 06 C 5812 (N.D. Ill.)**

Dear Mr. Sheehan:

We have reviewed MetLife's Supplemental Response to Guardian's Second Request for Production of Documents, MetLife's Supplemental Response to Guardian's Second Request for Admissions (collectively, MetLife's "Responses"), and the three-page Privilege Log served with those Responses on Thursday, August 6, 2009.

MetLife's Responses and Privilege Log reflect a flagrant disregard of the Federal Rules of Civil Procedure and disrespect for the Court's July 20, 2009 Order. The answers provided by MetLife are non-responsive, incomplete, and misleading. They contradict sworn testimony of MetLife witnesses and representations made by MetLife's counsel to the Court. Several responses are inconsistent with each other, and at odds with information appearing on MetLife's Privilege Log. Plainly, documents responsive to Guardian's Requests are being withheld, many under specious claims of privilege, in what amounts to a potentially widespread abuse of discovery on the part of MetLife.

Accordingly, Guardian hereby demands that MetLife (1) provide complete and proper responses to Guardian's Second Request for Admissions; (2) identify and produce all documents responsive to Guardian's Second Request for Production of Documents; (3) produce all non-privileged documents currently listed on its Privilege Log; and (4) provide an amended Privilege Log. In the event MetLife fails to comply with these demands by noon on Tuesday, August 11, 2009, Guardian will seek appropriate relief from the Court.

WINSTON & STRAWN LLP

Michael J. Sheehan
August 10, 2009
Page 2

### A.    MetLife's Privilege Log

#### 1.    Failure To Comply With Fed. R. Civ. P. 26(b)(5)

MetLife's Privilege Log is utterly confusing. It contains 14 entries for emails, most of which are listed as email chains. As a result, multiple emails are grouped together and treated as a single entry. (*See* Emails Nos. 1, 2, 4, 6, 7, 8, 9, 13 and 14.) Although in some instances MetLife has identified the "[i]nitial author" of the email, it has failed to identify the corresponding recipient or recipients of the "initial" email, the author and recipient(s) of each successive email within the chain, or the dates upon which each such email was sent. It is completely impossible to ascertain, thus, who sent and received what email and when and whether an attorney was party to any or all of the communications. Moreover, MetLife has used the same "[p]rivilege [d]escription" for all emails in the chain, leading one to believe that all such emails are protected by the same privilege when, in fact, that does not appear to be the case. Indeed, some of the emails listed on the Privilege Log have been produced.

MetLife's Privilege Log also is inadequate because it fails to identify any of the documents listed on its Privilege Log by Bates number. Thus, it is unclear whether MetLife is asserting the privilege solely as to the particular email communication or as to any files or documents attached to those email communications as well. You also refers to several individuals without providing any information as to their respective titles or roles. For example, no information whatsoever is provided for Laura Ginter (No. 2), Dean Mansavage (No. 4), Charlene Inwinski (No. 6), or Melinda Herbst (No. 13). Others are identified with two or three word descriptions that disclose almost nothing about the person or where they fit in the MetLife organization. Some entries are also inconsistent. For example, Stephen Potts is identified in one entry as "Financial Planner" (No.5) but in another entry (No. 7) as "Sales." *See Muro v. Target Corp.*, 250 F. R.D. 350, 365 (N.D. Ill. 2007) (determination that certain "insufficient" titles violated Fed. R. Civ. P. 26(b)).

Federal Rule of Civil Procedure 26(b)(5)(A)(ii) requires that the information provided on a privilege log must be sufficiently detailed so as to "enable other parties to assess the claim" of privilege." In this jurisdiction, Judge Ashman has clearly articulated the types of information to be included in a privilege log and the manner in which such information is to be presented. *See Heriot v. Byrne*, 2009 WL 742769 at *21 (N.D. Ill. March 20, 2009). The information provided in MetLife's Privilege Log falls far short of these criteria and should be amended at once.

#### 2.    Failure To Establish Attorney Client Privilege

MetLife's assertion of the attorney-client privilege as to *all* documents listed on its Privilege Log is specious. Only two of the privilege descriptions indicate that the communication contain or reflect legal advice (Email Nos. 5 and 14). Only one of those communications (No. 14), however, involved an attorney. Two other emails purportedly reflect, in part, counsel's "legal analysis" or "strategy" (Nos. 2 and 4), but they are part of email chains

WINSTON & STRAWN LLP

Michael J. Sheehan
August 10, 2009
Page 3

in which the role of counsel cannot be ascertained.

The vast majority of the items on MetLife's Privilege Log—Email Nos. 1, 6-9, 13, portions of Email Nos. 2 and 4, and Spreadsheets Nos. 1-14—indicate that they were "sent" to or "compiled for" MetLife's counsel "to assist in investigation of litigation." Materials assembled in connection with an investigation of litigation do not fall within the scope of the attorney client privilege. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991); *accord Heriot v. Byrne*, 2009 WL 742769, at *7 (N.D. Ill. Mar. 20, 2009) (the attorney client privilege "adheres only if the communications constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence.") Accordingly, MetLife should produce all documents listed in Email Nos. 1, 2, 4, 6-9, 13 and Spreadsheet Nos. 1-14, as MetLife has failed to establish that these items reflect any legal advice, strategy or analysis.

MetLife also is obligated to produce the Spreadsheets listed in its Privilege Log, along with the emails listed in Email No. 9, because any privilege that might have attached to such documents has been waived. During the FINRA arbitration, MetLife produced several screen shots taken of MetDirect Order Tracking reports compiled by Dan Shaffer. (*See, e.g.,* H2147-2150.) These very screenshots and other MetDirect information were referenced in the Declarations of Jerald Stiedaman, dated May 11, 2009, and June 3, 2009, and submitted to the Court in support of MetLife's trade secrets and sanctions motions. MetLife also used MetDirect Reports and related information throughout the course of the FINRA arbitration, during the direct and cross-examination of multiple witnesses. For MetLife now to take the position that communications relating to MetDirect Reports are protected, attorney-client communications, is completely disingenuous.

**B.    MetLife's Supplemental Responses to Guardian's Second Request For Admissions**

MetLife's Responses to Guardian's Requests for Admissions also are grossly deficient. In Requests Nos. 1-21, Guardian asked MetLife to admit or deny, as to each of the 21 former MetLife employees who joined Guardian during 2005, that:

MetLife *presently does not have in its possession* a copy of the data or other information maintained on the hard drives of all desktop and/or laptop computers supplied by MetLife to [each individual] for use in connection with [his/her] employment by MetLife.

MetLife responded to each request using the identical, non-responsive answer:

MetLife admits it did not make a bit by bit image of [each individual's] hard drive at the time of his/her resignation because every bite of data on [each individual's] desktop and/or laptop computers was not relevant to this litigation. MetLife adds

WINSTON & STRAWN LLP

Michael J. Sheehan
August 10, 2009
Page 4

that information on [each individual's] computers *may have been preserved elsewhere* and that absent a more specific description of the information Defendants' seek, MetLife *cannot admit or deny whether it is in possession* of such data.

MetLife provided the identical response to Request No. 22, in which Guardian asked MetLife to admit or deny that it *"did not preserve all of the data maintained on the hard drives* of all desktop and/or laptop computers supplied by MetLife to each of the [21 individuals] following the termination of each such individuals' employment with MetLife in 2005:"

MetLife admits it did not make a bit by bit image of the hard drives for the desktop and/or laptop computers supplied to the individuals identified in Paragraphs 1 through 21 at the time of their resignations because every bite of data on their desktop and/or laptop computers was not relevant to this litigation. MetLife adds that information on these individuals' computers *may have been preserved elsewhere* and that absent a more specific description of the information Defendants' seek, MetLife *cannot admit or deny whether it is in possession* of such data.

MetLife's responses to these Requests are wholly inadequate. MetLife admits that it did not make a "bit by bit image" of the hard drives but fails to state whether it possesses or preserved such information in any other manner. The notion that MetLife "cannot admit or deny whether it is in possession of" or "preserved" this information is completely preposterous. If MetLife has some, but not all of the information, it is required to identify the information it has, and the information it does not have. If it can neither admit nor deny the matter as to which an admission is sought, it must explain all efforts it has undertaken and inquiries it has made to ascertain the matters called for in the requests, identify the other sources of this information and supply any necessary documents. *Adams v. Cavanagh Communities Corp.*, 1988 WL 64097, *2 (N.D. Ill. June 13, 1988). MetLife has provided none of this information at all.

MetLife's response to Request No. 23 is also deficient. There, Guardian asked MetLife to admit or deny that it had not undertaken any "forensic analysis" of the MetLife "computers and/or servers" located at Downers Grove to determine if any of the 21 individuals had "accessed the MetDirect database in May and June 2005 and downloaded and/or copied MetDirect reports from that database." Although MetLife again admits that it did not make a bit by bit image of the individuals' computers, it fails to address that portion of Guardian's Request addressed to MetLife's computer "servers." MetLife's assertion that it did not perform forensic analyses of the individuals' MetLife computers because "the source of such information was not their personal computers" is nonsensical. Guardian's request relates to the individuals' MetLife computers, not their personal computers. MetLife's claim that no investigation of the individuals' attempts to access MetDirect was performed in July 2005 is patently false. According to MetLife's own Privilege Log, MetLife engaged in an investigation of "MetLife representative

WINSTON & STRAWN LLP

Michael J. Sheehan
August 10, 2009
Page 5

log-in information and orders" on July 11, 2005. The remaining accusations MetLife makes in response to Request No. 23 are baseless, improperly argumentative and should be stricken.

### C.      MetLife's Supplemental Responses to Guardian's Second Request For Production

MetLife's Responses to Guardian's Second Request For Production of Documents are evasive, inaccurate and incomplete.

Request No. 1. Request No. 1 seeks the production of documents "referring or relating to MetLife's review, examination, consideration and/or analysis of the *productivity or production targets* set" for the 21 former MetLife employees who joined Guardian during 2005. In its answer, MetLife claims that "there are no responsive documents" because it "did not set individual production targets" for the 21 former employees. This appears to be a complete fabrication. Dean Gregory testified that several of the 21 former MetLife employees were not meeting "minimum production standards" at the time they resigned in 2005. (FINRA Arbitration Hearing Tr. July 25, 2007 at 415). These individuals confirmed that they had been terminated or advised by Dean Gregory to transfer because they were not meeting production targets. *See, e.g.,* FINRA Arbitration Hearing Transcripts November 4, 2008 at 377-78 (Beck), November 6, 2008 at 702-05 (Brennan), and November 3, 2008 at 107-109 (Overton). Guardian thus demands the immediate production of documents responsive to Request No. 1.

Request No. 8. MetLife claims in response to Request No. 8 that it "did not maintain any list, index or inventory of *all* the hard copy client files maintained at the MetLife Downers Grove agency during the period January 1, 2005 through October 1, 2005." Guardian, however, did not ask for a list, index or inventory of "all" hard copy files maintained at Downers Grove; Guardian requested the production of any list, index or inventory of hard copy files—whether such list contains all of the hard copy files or only some of them. Accordingly, Guardian reiterates its request for the production of the documents sought in Request No. 8.

Request No. 20. In this Request, Guardian asks MetLife to produce all "documents reflecting, relating or referring to *any steps taken by MetLife to preserve* the information maintained on the hard drives" of the MetLife computers supplied to the 21 former MetLife employees. MetLife claims that it "is unaware of any responsive documents in its possession." MetLife's response is highly misleading. MetLife's Privilege Log shows that "electronic information" was being collected during late June 2005, and a "computer investigation" being conducted during July 2005. MetLife's counsel also has represented that a database containing "thousands" of MetLife emails was created at or about this time. Moreover, in its Response to Guardian's Second Request for Admissions, MetLife concedes that information on these computers "may have been preserved" which means some "steps" must have been taken to preserve it. Finally, as MetLife well knows, its obligation to produce documents extends, not

WINSTON & STRAWN LLP

Michael J. Sheehan
August 10, 2009
Page 6

only to those in its actual "possession," but to those in its "custody or control" as well. Guardian demands that all documents responsive to Request No. 20 be produced.

Request No. 21. MetLife's response to Guardian's Request No. 21 suffers from the same defects as MetLife's Response to Request No. 20. In Request No. 21, Guardian asks MetLife to produce all "documents regarding any forensic analysis of computers and servers" at Downers Grove during July 2005, to determine which of the former MetLife employees "accessed the MetDirect database in May and June 2005 and downloaded and/or copied MetDirect reports from that database." MetLife claims, in its Response, that it is "unaware of any responsive documents in its possession." Once again, however, MetLife's Response appears to be inaccurate. Its Privilege Log shows that a "computer investigation" and investigation concerning "MetLife representative log-in information and orders" was being conducted during July 2005. All such documents in MetLife's possession, custody or control, thus, should be produced.

Request No. 22. In Request No. 22, Guardian asks MetLife to produce "[a]ny and all litigation holds, document preservation notices and/or other communication(s) provided by MetLife to its personnel" regarding this litigation, at any time from January 1, 2005 through the present. MetLife objects to this Request, claiming that "correspondence sent from MetLife's counsel is privileged" and citing to *Muro v. Target Corp.*, 2007 U.S.Dist. LEXIS 81776, at *33-34 (N.D. Ill. 2007). MetLife, however, did not list any litigation hold or document preservation notices on its Privilege Log. MetLife's reliance on *Muro* is also misplaced. *Muro* did not involve a situation in which the party from whom the discovery is sought destroyed information highly relevant to the case. Here, however, MetLife employee Jerald Stiedaman admitted that he received no litigation hold notice, that no steps were taken to preserve the hard drive of his computer when it crashed, and that all of his emails from the relevant time periods—2005, 2006 and 2007—had been destroyed. In such situations, where questions concerning the scope of a party's preservation are raised, courts have held that litigation hold notices are relevant and must be produced. *See, e.g., Zubulake v. UBS,* 229 F.R.D. 422 (S.D.N.Y. 2004).

### D.    Conclusion

Guardian served MetLife with a Second Request for Admissions and a Second Request for Production on May 31, 2009. MetLife responded with a frivolous objection, forcing Guardian to file a motion to compel. During a motion conference on July 7, 2009, Judge Ashman soundly rejected MetLife's objection. Instead of pursuing its motion to compel, Guardian agreed to hold that motion in abeyance pending receipt of MetLife's answers to these discovery demands on August 6, 2009. The Responses served by MetLife, however, are plainly deficient and smack of bad faith.

Accordingly, Guardian demands that MetLife (1) provide complete and proper responses to Guardian's Second Request for Admissions; (2) identify and produce all documents responsive to Guardian's Second Request for Production of Documents; (3) produce all non-privileged

WINSTON & STRAWN LLP

Michael J. Sheehan
August 10, 2009
Page 7

documents currently listed on its Privilege Log (Email Nos. 1, 6-9, 13, portions of Email Nos. 2 and 4, and Spreadsheets Nos. 1-14); and (4) provide an amended Log. In the event MetLife fails to comply with these demands by noon on Tuesday, August 11, 2009, Guardian will seek all available and appropriate relief from the Court.

Very truly yours,

Lori J. Van Auken

cc:     Kimball Anderson
        Virginia Richard
        Rachel B. Cowen (Drinker, Biddle & Reath)
        Terrence Canade (Locke, Lord, Bissell & Liddell LLP)
        Steven Whitmer (Locke, Lord, Bissell & Liddell LLP)

# EXHIBIT 16

# DrinkerBiddle&Reath
### L L P

Rachel Cowen
Partner
312-569-1177 Direct
312-569-3177 Fax
rachel.cowen@dbr.com

*Law Offices*

191 North Wacker Drive
Suite 3700
Chicago, IL
60606-1698

312-569-1000 phone
312-569-3000 fax
www.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

August 25, 2009

**VIA EMAIL**

Lori Van Auken
Winston & Strawn LLP
200 Park Avenue
New York, New York 10166

**Re:**   <u>**Metropolitan Life Insurance Co. v. The Guardian Insurance Co., et al.**</u>
         **Case No. 06 C 5812**

Dear Lori:

I write in response to your August 10, 2009 letter which alleges numerous deficiencies in MetLife's Privilege Log, MetLife's Supplemental Responses to Guardian's Second Request for Admissions, and MetLife's Supplemental Responses to Guardian's Second Request for Production of Documents. I will address each of these in turn.

## I.   MetLife's Privilege Log

You raise several objections to the form of MetLife's Privilege Log. We disagree with your characterization of this document as "utterly confusing." MetLife's Privilege log complies with all of Magistrate Judge Ashman's specifications set forth in both *Heriot v. Byrne*, 2009 WL 742769 at 21 (N.D. Ill. March 20, 2009) and *In re JP Morgan Chase & Co. Securities Lit.*, 2007 WL 2363311, at *12 (N.D. Ill. Aug. 13, 2007). Nevertheless, in the spirit of cooperation, we have enclosed an amended privilege log that addresses the concerns expressed in your letter. Namely, we have separated emails within email chains into individual entries. We have also clarified job titles for the individuals identified in your letter.

You also object to the substance of MetLife's Privilege Log. Specifically, you contend that Email Nos. 1, 6-9, 13, portions 2 and 4, and Spreadsheets Nos. 1-14 are not privileged because they were sent to counsel "to assist in the litigation." You also contend that MetLife waived any privilege that might have attached to Email No. 9 and Spreadsheets Nos. 1-14 because it previously produced screen shots of MetDirect Order Tracking reports in the FINRA arbitration. Neither contention has merit.

*First*, all documents identified on MetLife's Privilege Log as containing information sent to counsel "to assist in the investigation of the litigation" are privileged. These documents reflect MetLife's counsels' thought processes and legal strategies.

*Established 1849*

August 25, 2009
Page 2

*Kodish v. Oakbrook Terrace Fire Protection District*, 235 F.R.D. 447, 453 (N.D. Ill. 2006)(attorney-client privilege applies where "the purpose of the communications was to review and consider legal issues pertaining to pending litigation").

    *U.S. v. White*, 950 F.2d 426 (7th Cir. 1991) and *Heriot v. Byrne*, 2009 WL 742769 at 21 (N.D. Ill. March 20, 2009) are distinguishable. In both cases, the parties asserting privilege sent their attorneys information to be used in preparing publically filed documents. Both courts held that no attorney-client privilege attached because the client had no reasonable expectation that the information would be maintained as confidential. Here, by contrast, the information provided to counsel was not submitted for the purpose of preparing public documents. Rather, the information was provided to counsel to investigate and assess MetLife's claim and with the expectation that it remain confidential.

    *Second*, MetLife's decision to produce 3 of the 14 spreadsheets does not waive privilege. For the reasons just discussed, we contend that the information in the non-produced spreadsheets is privileged. MetLife production of some spreadsheets does not entitle Guardian to discover additional information that will reveal MetLife's counsel's thought processes and legal strategies. Nevertheless, MetLife's recent review of the unallocated space on Guardian's Hutch and Yoda servers increases the significance of these documents (they confirm that MetDirect reports were ordered). Accordingly, MetLife agrees to produce the remaining spreadsheets which are enclosed as Bates Nos. H2147-2163. These documents correspond to the former MetLife employees:

        H 2147: Laura Davis
        H 2148: Mary Patricia Ernst
        H 2149: Annette Hammortree
        H 2150: Jeffrey Adler
        H 2151: Ann Beck
        H 2152-53: Jeff Bishop
        H 2154: Bruce Bitter
        H 2155: Ann Brennan
        H 2156: John DeSimone
        H 2157: Richard Henson
        H 2158: Rhonda Jecman
        H 2159: Tricia Overton
        H 2160: Donald Suckow
        H 2161: James Wilbert
        H 2162-63: Greg Zastrow

MetLife retains the privilege with respect to the underlying email communication.

August 25, 2009
Page 3

## II. MetLife's Supplemental Responses to Guardian's Second Request for Admissions

Request Nos. 1-22. You contend that MetLife must identify all information in its possession that was contained on the hard drives of the computers used by each individual specified in Request Nos. 1-21. MetLife admitted it did not image these hard drives. Our answer is clear. Our response merely clarified that data saved on those hard drives may have resided, and therefore, been preserved elsewhere. MetLife cannot search for information in other sources absent a specific request from Guardian identifying what information it seeks.

*Adams v. Cavanaugh Communities Corp.*, 1998 WL 64097, at *2 (N.D. Ill. June 13, 1988) is distinguishable. There, the responding defendants argued they misplaced materials necessary for answering plaintiff's requests to admit. The court held that defendants' responses were deficient because they failed to identify the necessary missing documents. Here, by contrast, MetLife does not contend that information necessary for answering these requests is misplaced. Rather, MetLife contends it cannot admit or deny whether it has preserved some of the information absent a more specific request from Guardian. In other words, Guardian's requests are deficient -- not MetLife's responses.

Request No. 23. You contend that MetLife's response fails to address whether it conducted a forensic analysis of MetLife's computer servers in July 2005 to determine which, if any, of the former MetLife agents downloaded MetDirect reports. MetLife's response clearly states that "no such investigation was performed in July 2005." With regard to your concern about document No. 9 in MetLife's Privilege Log, it contains a typographical error. As reflected in MetLife's Amended Privilege Log, the correct date of the privileged email is December 11, 2007.

## III. MetLife's Supplemental Responses to Guardian's Second Request for Production of Documents

Request No. 1. Guardian has requested that MetLife produce documents "referring or relating to MetLife's review, examination, consideration and/or analysis of the productivity or production *targets* set for the 21 former MetLife individuals who joined Guardian during 2005. MetLife stands on its response that no responsive documents exist. MetLife did not set production "targets" for the individual agents.

Your reference to Dean Gregory's testimony about Minimum Production Requirements ("MPR") is different than production targets. Each year, MetLife sets a single MPR for employees on its basic compensation plan. Any employee who fails to meet the MPR is terminated. Thus, MPR represents the bare minimum an employee must produce to keep his job. If Guardian believes this information is relevant, MetLife has no objection to producing the 2005 MPR upon receipt of a proper written request.

August 25, 2009
Page 4

    <u>Request No. 8.</u> Guardian has requested that MetLife produce documents "reflecting any list, index and/or inventory of the hard copy client files maintained at the MetLife Downers Grove agency" from January 1 to October 1, 2005. MetLife maintains that no list, index and/or inventory" exists. This includes any partial list, index and/or inventory.

    <u>Request Nos. 20 & 21.</u> Guardian has requested that MetLife produce (i) documents referring to "any steps taken by MetLife to preserve the information maintained on the hard drives" of the MetLife computers of the 21 MetLife former employees and (ii) documents regarding "any forensic analysis of computers and servers" at MetLife Downers Grove agency during July 2005 to determine which, if any, former employees accessed the MetDirect database. MetLife maintains it has no non-privileged documents responsive to these requests.

    MetLife's Privilege Log does not suggest otherwise. *First*, as explained above, the July 11, 2005 date on MetLife's Privilege Log is a typographical error, which has now been revised. Moreover, MetLife has produced the underlying spreadsheets so the issue is moot.

    *Second*, the June 21, 2005 email entry regarding MetLife's "collection of electronic information," refers to collection of emails (our revised privilege log makes this clear). As we have told you repeatedly, MetLife does not store emails on the hard drives of the agents computers. Emails are kept on a central server and are also archived in a repository on the server. Nor would an email review constitute "forensic analysis."

    *Finally*, we have never represented that MetLife "created" a database of emails for purposes of this litigation. Rather, we explained that MetLife reviewed several agents' ingoing and outgoing emails, which were stored on MetLife's email server (*e.g.*, the database) for any evidence that Mr. O'Malley improperly solicited MetLife employees in violation of his restrictive covenant and fiduciary duty, and that thousands of emails may have been reviewed before finding Laura Davis "secret email" to Jeff Adler & Annette Hammortree. We have produced that email. Your suggestion that MetLife must also produce the entire inbox and sent box for these agents because that is where the review process started is preposterous, and contrary to FRCP requirements. <u>Rothman v. Emory Univ.</u>, 123 F.3d 446, 455 (7th Cir. 1997)(finding that Rule 34 requires a party to sort through its documents and "produce only those responsive" to its adversary's requests).

    <u>Request No. 22.</u> MetLife stands on its objections to Guardian's request for litigation hold and document preservation notices. Guardian has no basis for contending that this information is relevant. Your contention that MetLife "destroyed information highly relevant to the case" apparently rests on the Mr. Stiedaman's testimony that he believes MetLife deleted his emails after three years, and therefore, his emails were not

August 25, 2009
Page 5

preserved. While Mr. Stiedaman, no doubt, honestly believed his testimony was accurate, it was not. He is a lay person with no personal knowledge of MetLife's document retention efforts in this case. In fact, MetLife does have possession of Mr. Stiedaman's 2005, 2006 and 2007 emails.

We believe this response should satisfy all your concerns. If there are any further issues, we can discuss them during our meet and confer on Friday morning.

Very truly yours,

Rachel Cowen

RC/mlt

cc:     Michael J. Sheehan
        Kimball Anderson
        Virginia Richard
        Terrence Canade
        Steven Whitmer

**EXHIBIT 17**

**METLIFE'S AMENDED PRIVILEGE LOG**
**Metropolitan Life Insurance Co. v. The Guardian Life Insurance Co. of America,**
**O'M & Associates LLC, DBA O'Malley & Associates**

| No. | Author | Recipients | CC | Date | Doc. Type | Description | Privilege Asserted | Privilege Description |
|---|---|---|---|---|---|---|---|---|
| 1A | Debbie Covay, Director of Operations[1] | Annette Bernstein, In-House Counsel Kevin Dunphy, Outside Counsel | Dean Gregory, Managing Director | 9/28/2005 | Email | Email regarding client inquiry into refund for cancelled policy based on recommendation from former MetLife agent | Attorney-Client Work Product | Sent to in-house and outside counsel, at counsel's direction, to assist in investigation of litigation |
| 1B | Debbie Covay | Annette Bernstein Kevin Dunphy | Dean Gregory | 9/23/2005 | Email | Email regarding client inquiry into refund for cancelled policy based on recommendation from former MetLife agent | Attorney-Client Work Product | Sent to in-house and outside counsel, at counsel's direction, to assist in investigation of litigation |
| 2A | Annette Bernstein | Michael Sheehan, Outside Counsel Kevin Dunphy Laura Ginter, V.P. Investigations | Debbie Covay Dean Gregory | 9/20/2005 | Email | Email regarding replacement activity by former MetLife agents | Attorney-Client Work Product | Sent by in-house to outside counsel, at counsel's direction, to assist in investigation of litigation |
| 2B | Debbie Covay | Annette Bernstein Kevin Dunphy | Dean Gregory John Schrieffer, V.P. Sales | 9/20/2005 | Email | Email regarding replacement activity by former MetLife agents | Attorney-Client Work Product | Sent to in-house and outside counsel, at counsel's direction, to assist in investigation of litigation |

[1] Unless otherwise indicated, all individuals referenced are MetLife employees.

| No. | Author | Recipients | CC | Date | Doc. Type | Description | Privilege Asserted | Privilege Description |
|-----|--------|-----------|-----|------|-----------|-------------|---------------------|----------------------|
| 3 | William J. Willet, Corp. Customer Relations | Annette Bernstein | Debbie Covay | 8/11/2005 | Email | Email regarding draft response to client complaint about missing client file | Attorney-Client Work Product | Sent to in-house counsel, at counsel's direction, for legal review |
| 3A | William J. Willet | | | | Word Doc. | Draft letter in response to client complaint about missing client file | Attorney-Client Work Product | Attachment in email sent to in-house counsel for legal review |
| 4 | Annette Bernstein | Michael Sheehan | Jeanna Woods, Operations Manager Dean Mansavage, Agency Manager Debbie Covay Dean Gregory | 8/18/2005 | Email | Email regarding client complaint about restricted access to individual MetLife eService accounts | Attorney-Client Work Product | Sent to outside counsel, at counsel's direction, to assist in investigation of litigation |
| 4B | Jeanna Woods | Annette Bernstein | Jeanna Woods Dean Mansavage | 8/17/2005 | Email | Email regarding client complaint about restricted access to individual MetLife eService accounts | Attorney-Client Work Product | Sent to inside counsel, at counsel's direction, to assist in investigation of litigation |
| 5 | Stephen Potts, VP Sales | Meredith Sullivan, Internal Audit-Field Staff | Debbie Covay | 8/04/2005 | Email | Email regarding client complaint about missing client file | Attorney-Client Work Product | Reflects legal advice provided by Annette Bernstein, in-house counsel |

| No. | Author | Recipients | CC | Date | Doc. Type | Description | Privilege Asserted | Privilege Description |
|---|---|---|---|---|---|---|---|---|
| 6 | Debbie Covay | Kevin Dunphy | | 8/4/2005 | Email | Email regarding client inquiry into funds transfer and communications with former MetLife agent | Attorney-Client Work Product | Sent to inside counsel, at counsel's direction, to assist in investigation of litigation |
| 7 | Debbie Covay | Kevin Dunphy | Stephen Potts Dean Gregory | 7/29/2005 | Email | Email regarding client complaint about missing client file | Attorney-Client Work Product | Sent to outside counsel, counsel's direction, to assist in investigation of litigation |
| 8 | Debbie Covay | Kevin Dunphy Annette Bernstein | Dean Gregory | 7/13/2005 | Email | Email regarding return of former agents' laptop computers | Attorney-Client Work Product | Sent to in-house and outside counsel, at counsel's direction, to assist in investigation of litigation |
| 9 | Dean Gregory | Annette Bernstein | Debbie Covay | 7/11/2005 | Email | Email regarding O'Malley and terminated reps,' communications with MetLife clients | Attorney-Client Work Product | Sent to in-house counsel at counsel's direction, to assist in investigation of litigation |
| 10 | Debbie Covay | Annette Bernstein | Dean Gregory Debbie Covay (bcc) | 6/29/2005 | Email | Email regarding communications with former agents about missing client files | Attorney-Client Work Product | Sent to in-house counsel at counsel's direction, to assist in investigation of litigation |
| 11 | Dean Gregory | Debbi Covay | Annette Bernstein Kevin Dunphy | 6/29/2005 | Email | Email regarding communications with former agents about missing client files | Attorney-Client Work Product | Sent to in-house and outside counsel, at counsel's direction, regarding to assist in investigation of litigation |
| 12A | William Tucek, IT | | | 6/30/2005 | Tracking Entry | Communication regarding review of former agents' emails | Work Product | Prepared at the request of Annette Bernstein to assist in investigation of litigation |

- 3 -

| No. | Author | Recipients | CC | Date | Doc. Type | Description | Privilege Asserted | Privilege Description |
|-----|--------|-----------|-----|------|-----------|-------------|--------------------|-----------------------|
| 12B | Annette Bernstein | William Tucek | Melinda Herbst, In-House Counsel John Schrieffer Kevin Dunphy | 6/28/2005 | Email | Email regarding review of former agents' emails | Attorney-Client Work Product | Sent from in-house counsel to outside counsel at counsel's direction, to assist in investigation of litigation |
| 12C | Annette Bernstein | William Tucek | Melinda Herbst John Schrieffer Kevin Dunphy | 6/28/2005 | Email | Email regarding review of former agents' emails | Attorney-Client Work Product | Sent from in-house counsel to outside counsel at counsel's direction, to assist in investigation of litigation |
| 12D | Dean Gregory | Annette Bernstein | | 6/28/2005 | Email | Email regarding review of former agents' emails | Attorney-Client Work Product | Sent to in-house counsel, at counsel's direction, to assist in investigation of litigation |
| 13. | Annette Bernstein | William Tucek | Dean Gregory Michael Sheehan Kevin Dunphy | 6/21/2005 | Email | Email regarding review of former agents' emails. | Attorney-Client Work Product | Sent to in-house counsel at counsel's direction, to assist in investigation of litigation |
| 14A | Naomi Neiman, Legal Assistant | Rachel Cowen, Outside Counsel | | 12/11/2007 | Email | Email regarding MetLife representative log-in information and orders | Attorney-Client Work Product | Sent to outside counsel, counsel's direction, to assist in investigation of litigation |
| 14B | Daniel Shaffer Director IB IT Tech. MetLife | Annette Bernstein Naomi Neiman | Don A. Davis, Asst. VP | 12/6/2007 | Email | Email regarding MetLife representative log-in information and orders | Attorney-Client Work Product | Sent to in-house counsel, at counsel's direction, to assist in investigation of litigation |

Dated:         August 25, 2009

- 4 -